IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS, LP, a limited liability partnership, KELVIN HILL, an individual, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00342-CG-B |
| ZURICH AMERICAN INSURANCE COMPANY, a corporation, ASPEN SPECIALTY INSURANCE COMPANY, a Corporation, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Corporation, S & S SPRINKLER, LLC, a limited liability company, and MICHELE SOUTHERLAND, in her capacities as the Personal Representative and Administrator of the Estate of Samuel Eugene Southerland, Jr., Deceased, and as the surviving and dependent spouse of Decedent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MOTION FOR PROTECTIVE ORDER REGARDING THE TIME AND SCOPE OF RULE 30(b)(6) DEPOSITION OF ASPEN SPECIALTY INSURANCE COMPANY**

**COMES NOW** Defendant Aspen Specialty Insurance Company ("Aspen") and, pursuant to Fed. R. Civ. P. 26(c), hereby moves for entry of a Protective Order requiring the deposition of Aspen's 30(b)(6) corporate representative to take place on April 14, 2016, or in the alternative that Aspen's 30(b)(6) deposition not be allowed to be taken at this time, and forbidding inquiry

1

as to certain topics at said deposition. In support of entry of a Protective Order, Aspen states as follows:

### Timing of Aspen's Rule 30(b)(6) Deposition:

1. In response to a request from counsel for Plaintiffs and as instructed by this Court during the January 19th telephonic hearing, the undersigned counsel for Aspen provided dates when Aspen's corporate representative could be available for deposition: April 7, 8, 14 or 15. (See correspondence and related email attached hereto as Exhibit 1).

2. In conjunction with scheduling Aspen's Rule 30(b)(6) deposition, the parties discussed the location of the deposition. Aspen is an out of state insurer. Rather than require all the parties to travel it was agreed that the Aspen corporate representative(s) would be presented for deposition in Birmingham, Alabama on one of the above dates.

3. Counsel for Plaintiffs scheduled the deposition of Aspen's corporate representative for April 14, 2016, well within the June 15, 2016 discovery completion deadline set forth in the Third Amended Rule 16(b) Scheduling Order. (See Notice of Deposition (Doc. 125) and email correspondence attached hereto as Exhibit 2).

4. Aspen's corporate representative(s) made plans and travel arrangements to travel from Boston, Massachusetts to Birmingham, Alabama to sit for deposition on April 14, 2016 to accommodate counsel for all parties to this action.

5. After the date of deposition was confirmed and Aspen's corporate representative had made scheduling and travel arrangements, Plaintiffs' counsel requested to move the deposition to March 24, 2016. Plaintiffs' counsels' reasoning for moving the deposition was to take the deposition of Aspen's corporate representative prior to the April 15, 2016 deadline for parties to

depose Plaintiffs' experts that must be disclosed by March 15, 2016.[1] (See email correspondence attached hereto as Exhibit 3).

6. In response to the request, the undersigned in good faith conferred with Aspen's corporate representative to determine if he could be available for deposition on March 24, 2016. However, Aspen's corporate representative could not be available on March 24, 2016 or any date prior to April 14, 2016, due to other professional obligations that require extensive travel.

7. The undersigned informed counsel for Plaintiffs that Aspen's corporate representative could not be available for deposition on March 24, 2016, but offered a good faith compromise to extend the expert deposition deadline in order to resolve the scheduling issue without the Court's involvement. (See email correspondence attached hereto as Exhibit 4).

8. In response, counsel for Plaintiffs unilaterally issued an Amended Notice of 30(b)(6) Deposition of Aspen's Corporate Representative for March 24, 2016. (Doc. 104-1).

9. Fed. R. Civ. P. 26(c) states that "A party or any person from whom discovery is sought may move for a protective order . . . to protect a person from annoyance, embarrassment, oppression, or undue burden and expense . . . (B) specifying the terms, including time and place, for the disclosure of discovery." Fed. R. Civ. P. 26(c).

10. Here, the parties collectively scheduled the deposition of Aspen's corporate representative to take place on April 14, 2016. Accordingly, Aspen's corporate representative made scheduling and travel arrangements to travel from Boston, Massachusetts to Birmingham, Alabama to sit for deposition in this action. Upon request, Aspen's corporate representative reviewed his availability for March 24, 2016, and all dates prior to April 14, 2016, in an attempt to accommodate Plaintiffs' counsels' belated request. Despite his best efforts, Aspen's corporate

---

[1] Of note, this March 15 deadline for disclosure of experts means that taking Aspen's 30(b)(6) deposition on Plaintiffs' counsel's desired date of March 24 will have no impact on any report of Plaintiffs' expert(s) that must be disclosed prior to the proposed date of deposition.

representative is not available to sit for deposition at any time prior to April 14, 2016. Accordingly, to protect itself from oppression and undue burden and expense, Aspen hereby moves for the entry of a Protective Order requiring the deposition of Aspen's corporate representative to take place on April 14, 2016 in Birmingham, Alabama as originally agreed upon by the parties. Aspen remains willing to consent to a reasonable extension of the deadline for deposing Plaintiffs' experts as it relates to claims presented against Aspen.

**In the alternative, Aspen's Rule 30(b)(6) deposition should not be taken at this time:**

11. Pursuant to Rule 26(c)(1)(D), Aspen moves this Honorable Court for a Protective Order prohibiting the deposition of Aspen's corporate representative at this time. In support of this motion for Protective Order, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Aspen adopts and incorporates the arguments and authorities set forth in the National Union Fire Insurance Company of Pittsburgh, PA's Motion for Protective Order. (Doc. 157). As the Court is well aware, Aspen has filed a Motion to Dismiss including a supporting Memorandum of Law (Docs. 102 and 103) and an alternative motion to bifurcate and stay discovery relating to Plaintiffs' claims of bad faith (Doc. 129). These Motions, the grounds for which are set forth fully in the Motions and supporting briefs that need not be repeated here, are still under consideration by the Court. (Docs. 122 and 127).

12. Plaintiffs' Amended Notice of 30(b)(6) Deposition of Aspen sets forth numerous areas of inquiry solely related to the alleged bad faith of Aspen in denying during the pendency of this declaratory judgment action Plaintiffs' claims for coverage in the underlying *Southerland* litigation: see areas of inquiry #s 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, and 18 set forth below. Considering the pendency of Aspen's Motion to Dismiss and its Motion to Bifurcate and Stay discovery of the bad faith claims asserted in the Second Amended Complaint, Aspen's Rule

30(b)(6) deposition should not be permitted at this time. Accordingly, Aspen moves for the alternative relief of prohibiting the 30(b)(6) deposition of Aspen's corporate representative at this time.

**General Objections to 30(b)(6) Areas of Inquiry**

13. Man of the areas of inquiry in Plaintiffs' Amended Notice of 30(b)(6) Representative of Aspen are not discoverable. First, the amended notice attempts to discover privileged communications between Aspen and its counsel and Aspen and it's named insured, S & S Sprinkler, LLC ("S & S"), **during the pendency of this coverage litigation**. This declaratory judgment action was commenced on July 2, 2015. (Doc. 1).  Aspen's policy was not triggered and it did not deny Plaintiffs' claims for coverage until after the commencement of this declaratory judgment action.  As stated in support of Aspen's Motion to Dismiss, Courts nationwide have recognized that "[o]nce litigation has commenced, the actions taken in its defense are not probative of whether an insurer in bad faith denied the contractual lawsuit." *Timberlake Constr. Co. v. United States Fidelity & Guar. Co.,* 71 F.3d 335, 340-41 (10th Cir. 1995)(citing *Palmer v. Farmers Ins. Exchange,* 861 P.2d 895, 915 (Mont. 1993)); *FDIC v. Aenta Cas. and Sur. Co.,* 903 F.2d 1073, 1080 (6th Cir. 1990)("pressing legitimate contractual defense . . . can certainly not be a basis for a bad faith claim."); *Sims v. Travelers Ins. Co.,* 16 P. 3d 468, 471 (Okla Ct. App. 2000)(holding that post-filing "conduct should rarely, if ever, be allowed to serve as proof of bad faith."); *Dakota, Minn. & E.R.R. Corp v. Acuity,* 771 N.W.2d 623 (S.D. 2009).  Accordingly, in order to prevent annoyance and oppression from inquiry into topics that are not relevant to any claim or defense in this litigation and are protected from disclosure, Aspen hereby moves for a Protective Order forbidding inquiry as to communications and analysis of Aspen after Plaintiffs' initiation of this coverage litigation on July 2, 2015.

14. Moreover, as stated to Plaintiffs' counsel in various pieces of correspondence attempting in good faith to resolve discovery disputes, Aspen's investigation of coverage for potential indemnity obligations of its named insured, S & S, is not relevant to a single claim or defense in this litigation. *FabArc Steel Supply, Inc. v. Composite Constr. Sys.,* 914 So. 2d 344, 356 (Ala. 2005)("An indemnitee must show that the fact situation of the original claim was covered by the contract of indemnity.")(See Ex. 6). Stated differently, Aspen's coverage obligations to its named insured, S & S, are not at issue in this litigation and Aspen's evaluation of coverage for S & S, is not discoverable. (See Ex. 6). Accordingly, Aspen hereby moves for a Protective Order forbidding inquiry into Aspen's investigation of coverage for potential indemnity obligations of its named insured, S & S, and limiting the scope of inquiry to Aspen's investigation of coverage for Plaintiffs Georgia Pacific Consumer Products, LP and Kelvin Hill as Additional Insureds under the Aspen Excess Insurance Policy.

15. Additionally, Aspen's communications with the other insurers of its named insured, S & S, are protected by the common interest doctrine and joint defense privilege. As stated to Plaintiffs' counsel attempting to resolve discovery disputes, "communications among primary and excess carriers concerning coverage and settlement reflect, without doubt, the thought processes, theories, conclusions and opinions of counsel . . . [that] were for the purpose (at least in part) of coming to a unitary position with respect to those underlying parties." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Grp.,* 1987 WL 18933 (N.D. Ill. Oct. 22, 1987). Any contention that there is not a joint defense privilege and/or common interest doctrine between Aspen, National Union, Zurich, and/or S & S is wholly unavailing. First, any argument that a named insured, its commercial general liability insurer (that provided defense counsel), and two follow form excess insurers (one of which is providing defense counsel) lack common

interest when the named insured faces demands for indemnity in a wrongful death action strains credulity. A written joint defense agreement is not required to invoke the common interest or joint defense privilege. *See Goldberg v. American Home Assurance Co.,* 80 A.D. 409, 413 (N.Y. 1981)(holding that the common interest doctrine "especially" applies "where an insured and his insurer initially have a common interest in defending an action against the former[.]"); *See also* 81 Am. Jur. 2d Witnesses § 434 (2004)("When an insurer, as required by a contract of insurance, employs counsel to defend its insured, any communication with the lawyer concerning the handling of the claim against the insured is necessarily a matter of common interest to both the insured and the insurer . . ."). As these communications are protected from discovery, Plaintiffs should be forbidden to inquire about them during Aspen's 30(b)(6) deposition.

16. Finally, many of the areas of inquiry designated in Plaintiffs' Amended Notice of 30(b)(6) Deposition of Aspen are not relevant to the contractual claims for coverage presented by the Plaintiffs' against Aspen in this matter. With respect to the construction of an insurance policy, "[t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide….If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Ohio Casualty Ins. Co. v. Holcim,* 2007 U.S. Dist. LEXIS 71896 (S.D. Ala. 2007) (*reversed and remanded on other grounds*) quoting, Nationwide Ins. Co. v. Rhodes, 870 So.2d 695,696-97 (Ala. 2003).

17. In neither the initial Complaint nor the Second Amended Complaint do Plaintiffs contend that the operative language in the Zurich primary policy is ambiguous or that any operative language in the Aspen excess policy is ambiguous. A party usually is not entitled to extrinsic discovery until it identifies an ambiguity in the policy language. Far from alleging an ambiguity; the Second Amended Complaint asserts that the relevant policy language is "unambiguous [and]

easy to understand." (Doc. 73-1, ¶ 38). Deposition discovery of Aspen's corporate representative as to the interpretation of the policy or the claims decision is not relevant nor warranted based upon the contractual claims for coverage under the Aspen excess policy. Accordingly, Aspen moves for the entry of a Protective Order prohibiting inquiry into Aspen's Corporate Representative's interpretation of the policy or the claims decision.

**Specific Objections to Rule 30(b)(6) Areas of Inquiry:**

1. The identity, including name, address, telephone number, position, and other employment information, including background, education, training, and duties, of all individuals who were directly involved with and/or handling the claims asserted by the Plaintiff in the underlying Southerland lawsuit as well as the claim for coverage asserted by Georgia-Pacific ("GP") in connection with this matter. This topic also includes the identities of all individuals who were involved with and/or who made the decision to deny coverage to GP under the applicable policy.

**Response:**  Aspen objects to this area of inquiry because it is not relevant to the contractual claim or defense in this coverage litigation.  The contractual claim against Aspen is whether Plaintiffs are due coverage under the excess policy of insurance issued by Aspen to S & S for the *Southerland* Lawsuit.  Accordingly, the only relevant information is the language of the applicable insurance policies and the pleadings and facts giving rise to the *Southerland* Lawsuit. Testimony concerning Aspen's employees that were involved with the handling and claim determination will not aid in determining whether coverage exists under the Aspen policy and is irrelevant to the question of coverage under the policy.

2. All factual and legal grounds for (a) all coverage defenses asserted by deponent in any Reservation of Rights letter(s) issued to S & S Sprinkler and/or GP; (b) the decision not to authorize settlement funds on behalf of GP; and (c) the ultimate denial of coverage as to GP. This topic includes, without limitation, the identification, interpretation, and application of (a) all pertinent policy provisions and (b) all facts relied upon in support of the decision by Deponent to deny coverage to GP.

**Response:** Aspen objects to this area of inquiry to the extent that it seeks testimony pertaining to the factual and legal grounds for coverage defenses assert by Aspen in reservation of rights letters directed to S & S. Aspen's investigation of coverage for potential indemnity obligations of its named insured, S & S, is not relevant to a single claim or defense in this litigation. Aspen's coverage obligations to its named insured, S & S, are not at issue in this litigation and Aspen's evaluation of coverage for S & S is not discoverable. Aspen hereby renews its motion for a Protective Order forbidding inquiry into Aspen's investigation of coverage for potential indemnity obligations of its named insured, S & S. Aspen further objects to this area of inquiry to the extent it seeks testimony from Aspen pertaining to the interpretation of policy provisions as this is a matter for the Court. Finally Aspen objects to this area of inquiry to the extent it seeks testimony regarding information and materials concerning Aspen's claim decision generated following the initiation of this litigation on July 2, 2015. As set forth above, this information is protected from discovery by the work product doctrine and is otherwise privileged. Aspen renews its motion for Protective Order as set forth above.

3. All decisions made, and actions taken and not taken, by the Deponent on S & S Sprinkler's and on GP's claims for coverage from the moment the Deponent was notified of the claims until the date of the Deponent's Rule 30(b)(6) deposition herein.

**Response:** Aspen's coverage obligations to its named insured, S & S, are not at issue in this litigation and Aspen's evaluation of coverage for S & S is not discoverable. Accordingly, Aspen hereby moves for a Protective Order forbidding inquiry into investigation of coverage for potential indemnity obligations of its named insured, S & S. Aspen further objects to this area of inquiry to the extent it seeks testimony concerning Aspen's "decisions made, and actions taken and not taken…on GP's claims for coverage…" following the initiation of this litigation on July 2, 2015. As set forth above, this information is protected from discovery by the work product

9

doctrine and is otherwise privileged. Aspen renews its motion for Protective Order as set forth above.

> 4. All defenses asserted in the Deponent's Answer(s) and other pleadings filed in the instant lawsuit, or otherwise.

**Response:** Aspen objects to this area of inquiry to the extent it seeks to require Aspen to testify concerning legal conclusions or to provide testimony which invades the work product doctrine by requiring the disclosure of counsel's mental impressions, advice or counsel's analysis of the significance or lack thereof of particular facts concerning this case.

> 6. All underwriting policy and procedures relating to the issuance of "Additional Insureds Endorsements", generally, and the Additional Insured Endorsement issued to GP in connection with S & S Sprinkler in this case. This includes testimony concerning the facts surrounding the issuance of the Additional Insured Endorsement to GP under the Zurich policy and the Deponent's knowledge and acquiescence of same.

**Response:** Aspen objects that this area of inquiry because it is not relevant to any claim or defense in this coverage litigation. The contractual claim against Aspen is whether Plaintiffs are due coverage under the excess policy of insurance issued by Aspen to S & S for the *Southerland* Lawsuit. Accordingly, the only relevant information is the language of the applicable insurance policies and the pleadings and facts giving rise to the *Southerland* Lawsuit. Testimony concerning Aspen's underwriting practices or the specific underwriting of this excess policy will not aid in determining whether coverage exists under the Aspen policy and is irrelevant to the question of coverage under the policy. *See Mei Pang v. Farmers Ins. Group*, 10 N.E.3d 301 (Ill. App. Ct. 2014) (plaintiff not entitled to discovery of underwriting file, policy forms, and underwriting manuals in suit to establish coverage under an insurance policy as relevancy of said discovery was not established) and *State Farm Mut. Auto Ins. Co. v. O'Hearn,* 975 So. 2d 633 (Fla. Dist. Ct. App. 2008) (underwriting file not discoverable until insurer's liability under the policy is established).

7. All verbal and written communications relating to facts, legal issues, settlement, and (broadly) coverage issues arising from the Southerland lawsuit between the Deponent and:

   a. Deponent's Named Insured, S & S Sprinkler, including its agents, servants, employees, representatives, brokers, independent contractors, and attorneys;

   b. Deponent's Named Insured's insurance brokers, Turner Insurance and Bonding Co., Inc. and CRC Insurance Services, Inc.

   c. Deponent's Additional Insured, GP, and;

   d. Zurich Insurance Company, either directly or through its TPA, Creative Risk Solutions.

   e. Any other insurers of S&S or GP.

**Response:** Aspen's coverage obligations to its named insured, S & S, are not at issue in this litigation and Aspen's evaluation of coverage for S & S is not discoverable. Accordingly, Aspen hereby moves for a Protective Order forbidding inquiry into verbal and written communications relating to facts, legal issues, settlement, and (broadly) coverage issues arising from the *Southerland* lawsuit between Aspen and it's named insured S & S. Aspen further objects to this area of inquiry to the extent it seeks testimony concerning Aspen's verbal and written communications relating to facts, legal issues, settlement, and (broadly) coverage issues arising from the *Southerland* lawsuit between Aspen and the other parties to this litigation including Zurich (Creative Risk Solutions); National Union; Turner Insurance and Bonding and CRC.  Aspen's communications with the other insurers of its named insured, S & S, are protected by the common interest doctrine and joint defense privilege. Aspen seeks a Protective Order prohibiting inquiry into communications between it and its named insured S&S as well as the other parties as they are protected by the work-product doctrine and/or attorney client privilege and are not relevant to any claim or defense in this coverage litigation.

      8. Policies and Procedures (written and in practice) of Deponent regarding:

          a. claims handling, including duties owed to its insureds in the claims handling process;

          b. denial of claims;

          c. investigation of claims;

          d. communication of denial of claims to insured;

          e. document retention (both paper and digital); and

          f. claims handling computer software systems and the identify of any "IT" vendors utilized by Deponent regarding the same.

          g. Application of any of the policy defenses asserted by Deponent, including how such policy defenses have been handled in the context of other similar claims.

**Response:** As to areas of inquiry (a)-(d), discovery concerning Aspen's policies and procedures for claims handling, claim declinations, investigation of claims and communication of claim denials to an insured are not relevant or material to the issue of whether coverage is afforded to Plaintiffs under the Aspen excess policies for the settlement paid by defendants to resolve the *Southerland* Lawsuit. Aspen renews its motion for Protective Order, set forth above, prohibiting inquiry into Aspen's policies and procedures for claims handling, claim declinations, investigation of claims and communication of claim denials to an insured unless and until coverage under the Aspen policy is established. With respect to areas of inquiry (e) – (g), these areas of inquiry are not relevant or material to the issues presented in this coverage action and are not reasonably calculated to lead to the discovery of admissible evidence. There are no issues pertaining to document retention, claims handling computer software or other claims in this coverage litigation.

> 9. The existence of any coverage opinions by coverage counsel and whether (or not) any such opinions were relied upon by Deponent for the issuance of any Reservation of Rights letter and/or denial of coverage at any time to S & S and/or GP.

**Response**: The existence of a coverage opinion as well as Aspen's reliance on the same is not discoverable in this action at this time. Under Alabama law absent the invocation of the affirmative defense "advice of counsel" to a claim of bad faith a coverage opinion prepared by an attorney to his client, an insurer is protected by both the attorney client privilege and the work product doctrine. Here, Aspen has filed a motion to dismiss the bad faith claims set forth in the Second Amended Complaint and thus, has not yet determined whether it will invoke the advice of counsel defense in this action. Aspen seeks a Protective Order prohibiting inquiry into this area of inquiry based upon the attorney client privilege and the work product doctrine. To the extent that this area of inquiry encompasses reliance on an attorney generated opinion letter as to Aspen's obligations to its named insured S&S, Aspen reiterates its objection that Aspen's coverage obligations to its named insured, S & S, are not at issue in this litigation and Aspen's evaluation of coverage for S & S is not discoverable

> 10. The identify and content of all items contained in the Deponent's claim file(s) pertaining to the underlying Southerland lawsuit and the claim for coverage by GP at all times.

**Response:** Aspen's claim file materials are not discoverable. Fed. R. Civ. P. 26(b)(3)(A) unequivocally states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative **(including the other party's attorney, consultant, surety, indemnitor, <u>insurer</u>, or agent)."** Given the context of this litigation wherein Georgia Pacific and Hill demanded indemnity from S & S and sued Aspen and S & S prior to mediation of the underlying *Southerland* Lawsuit, Aspen's investigation and evaluation of coverage for Plaintiffs occurred in

anticipation of litigation or after the initiation of litigation. Therefore, the information about which testimony is sought is attorney work product that is not discoverable. Even in the event discovery on bad faith moves forward, Aspen is only required to provide testimony regarding the "non-privileged" [not prepared in anticipation of litigation or otherwise privileged] documents in its claim file generated prior to the filing of the subject action on July 2, 2015.

Accordingly, Aspen objects to this area of inquiry to the extent it seeks testimony regarding information and materials concerning Aspen's claim decision generated following the initiation of this litigation on July 2, 2015. As set forth above, this information is protected from discovery by the work product doctrine and is otherwise privileged. Aspen renews its motion for Protective Order as set forth above.

> 11. The decision making process, including grounds, reasons, rationale, the basis for same and the individuals involved, for not offering or authorizing any settlement funds prior to Mediation I and Mediation II in the underlying Southerland lawsuit.

**Response:**  This area of inquiry is duplicative with areas of inquiry #s 2 and 3 above. Aspen adopts and incorporates its responses to those areas of inquiry. Both Mediation I and Mediation II occurred after this coverage action was filed by plaintiffs. Thus, Aspen further objects to this area of inquiry to the extent it seeks testimony concerning Aspen's decisions making process, grounds, reasons, rationale, basis and the individuals involved in its actions or inactions at Mediation I and Mediation II. As set forth above, this information is protected from discovery by the work product doctrine and is otherwise privileged. Aspen renews its motion for Protective Order as set forth above.

> 12. Facts concerning whether Deponent was afforded an opportunity and access to defense materials arising from the underlying Southerland lawsuit, including any claim file materials from Zurich and/or its TPA; whether Deponent took advantage of that opportunity; and, actions taken or not taken by Deponent regarding same.

**Response:**  Plaintiffs' currently seek to recover against Aspen's named insured S&S for indemnity and breach of contract.  Aspen is providing defense counsel to S&S to defend these claims.  To the extent that this area of inquiry seeks testimony concerning Aspen's obligations to its named insured S&S, Aspen's coverage obligations to its named insured are not at issue in this litigation and Aspen's evaluation of coverage for S & S is not discoverable.   Moreover, to the extent that this area of inquiry seeks testimony concerning Aspen's activities undertaken after the filing of this lawsuit, such inquiry is not permitted as these activities are shielded from discovery by Rule 26(b)(3)(A).

13. All action(s) taken and not taken by Deponent when notified of the imminent settlement reached in, and as result of, Mediation II.

**Response:**  This area of inquiry seeks testimony concerning Aspen's activities undertaken after the filing of this lawsuit. Such inquiry is not permitted as these activities are shielded from discovery by Rule 26(b)(3)(A).

14. Interpretation of Deponent's policy's language, including all endorsements, applicable or germane to the issues in this case, including the interplay of excess coverage to following form coverages provided under a primary policy.

**Response:**  Aspen objects to this area of inquiry because it seeks testimony that is not relevant or material to this issues in this coverage action.  With respect to the construction of an insurance policy, "[t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide….If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court."  *Ohio Casualty Ins. Co. v. Holcim,* 2007 U.S. Dist. LEXIS 71896 (S.D. Ala. 2007) (*reversed and remanded on other grounds*) quoting, Nationwide Ins. Co. v. Rhodes, 870 So.2d 695,696-97 (Ala. 2003).  Plaintiffs do not contend that the operative language in the Zurich primary policy is ambiguous or that any operative language in the Aspen excess policy is ambiguous.  To the

contrary, Plaintiffs assert that the relevant policy language is "unambiguous [and] easy to understand." (Doc. 73-1, ¶ 38). Deposition discovery of Aspen's corporate representative as to the interpretation of the policy or the claims decision is not relevant nor warranted based upon the contractual claims for coverage under the Aspen excess policy.  Aspen renews its motion for a Protective Order prohibiting inquiry into Aspen's interpretation of policy language.

> 15. All items in Deponent's file at the time it made the decision (a) to deny GP's claim for coverage and (b) to refuse to authorize funds to be used towards settlement of the underlying Southerland lawsuit.

**Response:**   Aspen objects to this area of inquiry to the extent it seeks testimony pertaining to the content of Aspen's so called "file" at the time it made its decision to deny GP's claim for coverage by refusing to contribute its policy limits towards settlement of the *Southerland* Lawsuit.   This area of inquiry seeks testimony concerning materials generated after the filing of this lawsuit. Such inquiry is not permitted as these activities are shielded from discovery by Rule 26(b)(3)(A).  Fed. R. Civ. P. 26(b)(3)(A) unequivocally states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative **(including the other party's attorney, consultant, surety, indemnitor, <u>insurer</u>, or agent)."** Given the context of this litigation wherein Georgia Pacific and Hill demanded indemnity from S & S and sued Aspen and S & S prior to mediation of the underlying *Southerland* Lawsuit, testimony concerning Aspen's file materials received or generated after the initiation of litigation is not discoverable.

Moreover, Aspen objects to this area of inquiry as it seeks testimony that is not relevant or material to the issue of whether coverage is afforded Plaintiffs under the Aspen policy issued to S & S for the settlement of the wanton and negligent wrongful death claims asserted in the

*Southerland* Lawsuit.  Aspen renews its motion for Protective Order prohibiting inquiry into this topic until and unless coverage under the Aspen policy for plaintiffs is established.

16. Premiums charged to its insured(s) for coverage.

**Response:**  Aspen objects to this area of inquiry as the amount of premiums paid is not relevant to any party's claim or defense.  *See,* F.R.Civ.P. 26(b)(1).

17. Deponent's corporate structure and ownership.

**Response:**  Aspen objects to this area of inquiry as Aspen's corporate structure and ownership is not relevant to any party's claim or defense.  *See,* F.R.Civ.P. 26(b)(1).  Aspen seeks a Protective Order prohibiting inquiry into this topic.

18. All relevant information concerning the issues in the case within the personal knowledge of the Deponent's Rule 30(b)(6) representative.

**Response:**  Aspen objects to this area of inquiry in that it is vague and not sufficiently specific pursuant to Rule 30(b)(6).  Aspen further objects to this area of inquiry to the extent it seeks information that is protected by the attorney/client privilege or work product doctrine or is otherwise beyond the scope of discovery.   Aspen seeks a Protective Order prohibiting inquiry into this non descriptive area of inquiry.

WHEREFORE, PREMISES CONSIDERED, Aspen respectfully requests a Protective Order requiring the deposition of Aspen's 30(b)(6) corporate representative to take place on April 14, 2016, forbidding inquiry as to post-litigation activity and communications with S & S other insurers, and limiting the scope of inquiry to Aspen's investigation and denial of coverage for Plaintiffs as Additional Insureds under the Aspen Excess Insurance Policy.

Respectfully submitted,

/s/ *Howard K. Glick*
Howard K. Glick ASB-1176-K64H
Lindsay Hembree ASB-9014-I40H
Daniel S. Weber ASB-2846-C13I
Attorneys for Aspen Specialty Insurance Company

OF COUNSEL
Simpson, McMahan, Glick & Burford, PLLC
The Mountain Brook Center
2700 Highway 280, Suite 203W
Birmingham, AL  35223-2468
Ph: (205) 876-1600
Fax: (205) 876-1616
Email: hkglick@smgblawyers.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mack B. Binion
Sarah Bond Dorger
Briskman & Binion, P.C.
mbinion@briskman-binion.com
sdorger@briskman-binion.com

M. WSarren Butler
Scott D. Stevens
Starnes Davis Florie, LLP
wbutler@starneslaw.com
sstevens@starneslaw.com

John W. Dodson
Michelle L. Crunk
Dodson Gregory LLP
jwd@dodsongregory.com
mlc@dodsongregory.com

Stanley A. Cash
John D. Herndon
Huie, Fernabucq and Stewart, LLP
jherndon@huielaw.com

J. Rushton McLees
Jaime C. Erdberg
Sirote & Permutt, P.C .
rmcclees@sirote.com
jerdberg@sirote.com


Daniel S. Wolter
Wolter Law Firm
dwolter@wolterlawfirm.com

                                              */s/* ***Howard K. Glick***
                                                Of Counsel