IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP, etc., et al.,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0342-WS-B |
| ) | |
| **ZURICH AMERICAN INSURANCE COMPANY, etc., et al.,** )<br>)<br>) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on the motion of defendant Aspen Specialty Insurance Company ("Aspen") to dismiss, brought pursuant to Rule 12(b)(6). (Doc. 102). The parties have filed briefs in support of their respective positions, (Docs. 103, 124, 128), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

**BACKGROUND**

According to the third amended complaint, (Doc. 182) ("the complaint"),[1] the entity plaintiff ("GP") operates a paper mill facility in Choctaw County. One defendant ("S&S") contracted with GP to perform work at the facility, in the course of which an employee of S&S was killed. S&S had agreed to obtain

---

[1] The motion to dismiss is directed toward the second amended complaint. (Doc. 85). Following the completion of briefing, the plaintiffs filed a motion for leave to file a third amended complaint. (Doc. 155). After all defendants declined the opportunity to object, the Court granted the motion. (Doc. 181). The third amended complaint is thus now the operative pleading. *E.g., Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) ("[U]nder the Federal Rules of Civil Procedure, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case …") (internal quotes omitted). However, because the third amended complaint makes no changes material to Aspen's motion to dismiss, (Doc. 155), its motion can be decided without re-briefing.

insurance in favor of GP and its officers and agents (including the individual plaintiff). Aspen issued an excess/umbrella policy but refused to investigate the matter or provide coverage and refused to participate in the ultimate settlement of the underlying lawsuit.

The third amended complaint asserts claims against Aspen for: breach of contract (Count One); negligence (Count Two); bad faith (Count Three); abnormal bad faith (Count Four); and declaratory relief (Count Nine). Aspen's motion targets only the bad faith claims.

## DISCUSSION

Aspen argues that the bad faith counts fail to satisfy the pleading requirements of Rule 8(a) and that, in any event, it owed the plaintiffs no duty at the time it denied their claim.

**I. Pleading.**

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

These are the pleading requirements of Rule 8(a)(2), and failure to meet them exposes a complaint to dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, and makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard.[2] "Vague, generalized

---

[2] This necessarily follows from the principle that the movant bears the burden of showing that dismissal for failure to state a claim is warranted. *E.g., Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012).

3

assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp.*, 2013 WL 1748796 at *2 (S.D. Ala. 2013).

The parties agree as to the elements of a normal bad faith claim under Alabama law:  (1) a breach of an insurance contract; (2) the intentional refusal to pay a claim; (3) the absence of an arguable reason for the refusal; and (4) the insurer's knowledge of the absence of an arguable reason for the refusal.  They also agree that a claim of abnormal bad faith includes a fifth element:  the intentional failure to determine whether there is an arguable basis for the refusal. (Doc. 103 at 5; Doc. 124 at 5).[3]  Aspen argues that the plaintiff has not adequately pleaded the fourth and fifth elements.  (Doc. 103 at 6, 7, 14).

Aspen does not dispute that the complaint adequately pleads the third element – that Aspen lacked an arguable reason for refusing to pay.[4]  The only

---

[3] Both sides rely on *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013), for this rendition.

[4] In its reply brief, Aspen changes tack, ignoring completely the fourth and fifth elements and arguing for the first time that the second amended complaint on its face negates the third element.  (Doc. 128 at 6-8).  This argument comes too late to be considered.  *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.") (citing cases and explaining rationale).

Even had this challenge been timely presented, it could not prevail.  Aspen's position is that the complaint, by listing reasons Aspen gave for denying coverage, "demonstrates that Aspen had arguable reasons for denial of coverage." (Doc. 128 at 6-7).  The complaint, however, does not reflect that the reasons Aspen gave for denying coverage were arguable, only that they were given.  Far from suggesting that Aspen's reasons were arguable, the complaint characterizes them as "erroneous," based on "mischaracteri[zation]," "[in]applicable" provisions and a practice of "ignoring" governing facts and law, and, ultimately, with "no basis, factual or legal." (Doc. 182 at 16-17, 19).  To the uncertain extent Aspen suggests that the complaint must "rebut" Aspen's articulated reasons and "sho[w]" they are inarguable, (Doc. 128 at 2, 8), it demands far too much of the plausibility standard.  *Cf. Austin v. Auto Owners Insurance Co.*, 2012 WL 3101693 at *5 n.8 (S.D. Ala. 2012) ("Nothing in the *Twombly/Iqbal* line of precedents would require a plaintiff to … transform her complaint into a summary

4

question is whether it adequately pleads that Aspen *knew* it lacked an arguable reason.  The complaint expressly so alleges:  "Aspen … refused to provide Plaintiffs with coverage (indemnity) and/or mediate, settle and pay the claims … and did so … with knowledge that there was no basis, factual or legal, to refuse to pay said claim/settlement …."  (Doc. 182 at 19).

The quoted language, protests Aspen, is a "conclusory assertion devoid of factual enhancement and a mere recitation of some of the elements of a claim for bad faith" and thus a legally insufficient allegation.  (Doc. 103 at 13 (internal quotes omitted)).  It is not, however, the only relevant allegation since, as noted, Aspen does not challenge the adequacy of the complaint's allegation that Aspen lacked an arguable reason for refusing to pay.  All that is required is a plausible allegation of knowledge, and it would appear facially plausible (though not necessarily correct in every case) that an insurer lacking any arguable basis for denying coverage would be aware it lacked an arguable basis.  Certainly Aspen offers the Court no reason to believe otherwise.

Turning to the fifth element, an abnormal claim of bad faith can be based on an "intentional or reckless failure to investigate a claim." *Singleton v. State Farm Fire & Casualty Co.*, 928 So. 2d 280, 283 (Ala. 2005).  The complaint alleges that Aspen failed to investigate the underlying incident, the underlying lawsuit, and the plaintiffs' status as additional insureds.  (Doc. 182 at 13, 20).  Aspen characterizes this, in familiar language, as a conclusory assertion devoid of factual enhancement and a mere recitation of elements of the claim.  (Doc. 103 at 7-8, 13).  Assuming without deciding that a bad faith complaint must allege subsidiary facts supporting an allegation of a "failure to investigate" in order to satisfy Rule 8(a)(2), the complaint does so.

---

judgment-style memorandum of law setting forth the entirety of her coverage argument, extensive analysis and application of the relevant policy provisions, and so forth.").

The complaint alleges that, at a July 2015 mediation, Aspen "asserted denials and reservations of coverage, and in doing so admitted that [it] had not investigated or evaluated the Southerland Lawsuit or Plaintiffs' demands and entitlement to coverage." (Doc. 182 at 14). It is certainly plausible that a defendant admitting it has not investigated has in fact not investigated. Aspen, however, labels this allegation "speculation," (Doc. 103 at 8), apparently on the theory that the plaintiffs are extrapolating a failure to investigate from a denial of coverage. That is, Aspen reads "in doing so" as meaning "by doing so." But "in doing so" can comfortably be read in the sense of "in the course of doing so," which would indicate that Aspen, while denying coverage at the mediation, also admitted it had performed no investigation.[5] Aspen offers the Court no reason to select its preferred reading over the equally plausible alternative, and the Court declines to do so.

Aspen suggests it could not have failed to investigate prior to the July 2015 mediation because this action was filed less than a week prior to the mediation. (Doc. 103 at 8-9). The Court is unable to make that impressive mental leap; a denial of coverage without an adequate investigation could occur at any time – including at the very moment the insurer becomes aware of a claim. Nothing in the alleged timing negates a failure to investigate.

Aspen next points to a letter it sent the plaintiffs the day before the July 2015 mediation; because the letter sets forth a reason for denying coverage, Aspen concludes that it must necessarily have conducted a legally sufficient investigation in order to come up with that reason. (Doc. 103 at 9). As a threshold matter, Aspen has not shown that the Court may consider the letter – which is neither an exhibit to the complaint nor referenced therein – on motion to dismiss. Even could the letter be considered, an insurer obviously could state a reason for denying a claim without having conducted any investigation to back it up –

---

[5] Indeed, Aspen elsewhere acknowledges that the complaint alleges that a "representation was made" that it had not investigated coverage. (Doc. 103 at 14).

6

indeed, that is the very premise behind the abnormal variety of bad faith. The letter, in short, does not negate a failure to investigate.

Aspen focuses on "investigation," but an abnormal case of bad faith "can [also] consist of … intentional or reckless failure to properly subject a claim to a cognitive evaluation or review …." *Singleton*, 928 So. 2d at 283. Thus, in abnormal bad faith cases, "[a] defendant's knowledge or reckless disregard of the fact that it had no legitimate or reasonable basis for denying a claim may be inferred and imputed to an insurer when it has shown a reckless indifference to facts or proof submitted by the insured." *Ex parte Simmons*, 791 So. 2d 371, 379 (Ala. 2000) (internal quotes omitted); *see also Blackburn v. Fidelity and Deposit Co.*, 667 So. 2d 661, 673 (Ala. 1995) (abnormal bad faith claim based on fact that the defendant "ignored other information as it became available"). Here, the complaint alleges that Aspen failed to conduct a "cognitive review and evaluation," (Doc. 182 at 20), but instead relied only on the pleadings in the underlying lawsuit, even after it was "provided and apprised of relevant and dispositive facts and evidence beyond those pleadings." (*Id*. at 16). Aspen does not assert that this allegation is implausible, (Doc. 103 at 11-12), and it plainly is plausible.

## II. Duty.

Aspen argues that, pursuant to the terms of its policy, it had "no duty whatsoever" to the plaintiffs until the primary insurer ("Zurich") paid its policy limits over to the underlying plaintiff.[6] That payment occurred on October 18, 2015, and Aspen asserts that all of the complaint's allegations of bad faith address its acts and omissions prior to that date. Thus, Aspen concludes, at the relevant

---

[6] The only duties identified in the portion of the policy on which Aspen relies are those of investigation, settlement and defense. (Doc. 82-1 at 7). This case does not concern the duty to defend. (Doc. 182 at 19-20; Doc. 124 at 20).

7

time it had no duties to the plaintiffs that it could have breached.  (Doc. 103 at 14-19).

The plaintiffs agree that Zurich's payment occurred on October 18, but they disagree that the policy (either as written or in light of public policy) conditions the activation of Aspen's duties on Zurich's actual payment (as opposed to its agreement to pay, which they say occurred at the July 2015 mediation).  They also disagree as to the scope of the complaint, asserting that it alleges bad faith continuing at least until the second amended complaint was filed in December 2015.  These are interesting questions, but the Court need not resolve them, since the plaintiffs raise another argument that proves dispositive.

"Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement."  *Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1, 4 (Ala. 1981) (internal quotes omitted).  However, "this requirement of good faith and fair dealing should be characterized as a duty implied *by law*."  *Id*. at 4-5 (emphasis added).  Again, "this good faith duty [is] imposed not by the contract itself, but rather *by law* …."  *Id*. at 6 (emphasis added); *accord Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981) ("Bad faith is the intentional failure by an insurer to perform the duty implied *by law* of good faith [and] fair dealing.") (emphasis added).  A breach of this duty occurs when the insurer, with no arguable reason and with knowledge (or culpable ignorance) that it has no arguable reason, intentionally refuses to pay a claim.  *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013).

It may (or may not) be, as Aspen insists, that it was under no contractual duty to investigate or to settle before Zurich actually paid its policy limits in October 2015.  And it may be assumed that Aspen was under no duty to make a coverage decision before that point.  According to the complaint, however, Aspen was not content to delay its coverage decision until actual payment was made.

8

According to the complaint, Aspen affirmatively and definitively denied coverage. (Doc. 182 at 16). As the plaintiffs note, (Doc. 124 at 18-19), by electing to deny coverage, Aspen became subject to the duty imposed *by law* to exercise good faith in making its coverage decision; that Aspen at that point in time may not have owed the plaintiffs any duty to investigate or settle imposed *by contract* is irrelevant. None of the authorities cited in Aspen's principal brief appear to support a contrary result, and in any event none of them were decided under Alabama law.

In its reply brief, Aspen offers no response to the plaintiffs' position. Instead, it again pivots to a brand-new argument wholly absent from its principal brief: that it "could not have engaged in bad faith because it was defending the complaint for declaratory judgment when it denied coverage." (Doc. 128 at 9). As previously noted, Aspen cannot obtain relief on the basis of an argument, previously available to it, not raised in its principal brief but only in reply. For that reason alone its argument is unavailing.

But the argument would fail even had it been timely presented. Aspen's authorities (none applying Alabama law) stand only for the proposition that an insurer's actions in defending a lawsuit brought by its insured generally cannot be used to establish the insurer's bad faith, on the theory that any probative value of such evidence is outweighed by the risk of unfair prejudice. That is, Aspen's cases only limit what evidence can be used to show that a denial was made in bad faith; they do not state or remotely suggest that a denial made during litigation cannot, for that reason, form the basis of a bad faith claim.

Moreover, the evidentiary exclusion extends only to an insurer's "litigation conduct,"[7] that is, its "'litigation tactics and strategy in defending a claim.'"[8]

---

[7] *Knotts v. Zurich Insurance Co.*, 197 S.W.3d 512, 523 (Ky. 2006); *Sims v. Travelers Insurance Co.*, 16 P.3d 468, 471 (Okla. App. 2000).

Aspen has not asserted (and would have a difficult time establishing) that its denial of coverage – which was made during, but not as part of, this litigation – constituted "litigation conduct" within the contemplation of its own authorities. And even could it do so, the evidentiary rule is not absolute but subject to exceptions,[9] one of which presumably would cover such a bald attempt to immunize a denial of coverage from bad faith review.

In a related vein, Aspen creatively proposes that, by filing an answer asserting that it investigated the plaintiffs' claim and had arguable reasons for denying coverage, it has insulated its denial from any bad faith claim, on the theory that its lawyers' Rule 11 certification must be held to be dispositive of the question. (Doc. 128 at 10-11). The argument, first raised in reply, comes too late to be considered, but it is in any event plainly meritless.

## CONCLUSION

For the reasons set forth above, Aspen's motion to dismiss is **denied**.

DONE and ORDERED this 21st day of April, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] *Timberlake Construction Co. v. United States Fidelity and Guaranty Co.*, 71 F.3d 335, 340 (10th Cir. 1995) (quoting *Palmer ex rel. Diacon v. Farmers Insurance Exchange*, 861 P.2d 895, 915 (Mont. 1993)).

[9] *Timberlake*, 71 F.3d at 341; *Knotts*, 197 S.W.3d at 523; *Palmer*, 861 P.2d at 915.