IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, etc., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 15-0342-WS-B ) |
| ZURICH AMERICAN INSURANCE COMPANY, etc., et al., | ) ) ) |
| Defendants. | ) |

ORDER

This matter is before the Court on the motion of defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National") to dismiss. (Doc. 121). The parties have filed briefs and exhibits in support of their respective positions, (Docs. 121, 133, 143, 145, 152), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied.

BACKGROUND

According to the third amended complaint, (Doc. 182) ("the complaint"),[1] the entity plaintiff ("GP") operates a paper mill facility in Choctaw County. One defendant ("S&S") contracted with GP to perform work at the facility, in the

---

[1] The motion to dismiss is directed toward the second amended complaint. (Doc. 85). Following the completion of briefing, the plaintiffs filed a motion for leave to file a third amended complaint. (Doc. 155). After all defendants declined the opportunity to object, the Court granted the motion. (Doc. 181). As National recognizes, (Doc. 143 at 5), the third amended complaint, (Doc. 182), is thus now the operative pleading. *E.g., Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) ("[U]nder the Federal Rules of Civil Procedure, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case ….") (internal quotes omitted). However, because the third amended complaint makes no changes material to National's motion to dismiss, (Docs. 155, 188), its motion can and will be decided without re-briefing. (Doc. 188).

course of which an employee of S&S was killed. S&S had agreed to obtain insurance in favor of GP and its officers and agents (including the individual plaintiff). National issued an excess/umbrella policy but refused to investigate the matter or provide coverage and refused to participate in the ultimate settlement of the underlying lawsuit.

The complaint asserts claims against National for: breach of contract (Count One); negligence (Count Two); bad faith (Count Three); abnormal bad faith (Count Four); and declaratory relief (Count Nine).

**I. Breach of Contract.**

According to the second amended complaint, (Doc. 85), the contract between GP and S&S included a master service agreement ("MSA"), which required S&S to obtain various insurance policies/coverages. (*Id*. at 6). National asserts that the MSA at issue is one dated June 5, 2007. (Doc. 121 at 4; Doc. 121-2). The plaintiffs respond that the MSA on which they sue is one dated December 1, 2008. (Doc. 133 at 4; Doc. 133-1 at 7-12). The language on which National relies in support of its motion to dismiss appears in the June 2007 MSA but not in the December 2008 MSA, so the question is of some consequence.

As the Court has previously explained, the second amended complaint "in pellucid language" identifies the December 2008 MSA as the MSA on which the plaintiffs rely. (Doc. 188 at 2). National's misdirected focus on a different MSA cannot support its motion to dismiss.

In its reply brief, after the plaintiffs pointed out its error, National shifts its focus to the December 2008 MSA. (Doc. 143 at 2-5). Because the language from the June 2007 MSA that forms the basis of National's motion to dismiss is absent from the December 2008 MSA, National is left to present completely new arguments as to how the MSA negates the plaintiffs' contract claim. "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8

2

(S.D. Ala. 2012) (citing cases and explaining rationale). National proposes that its tardy argument nevertheless should be considered because the second amended complaint left National "guessing" as to which MSA the plaintiffs contended was controlling. (Doc. 152 at 1). For reasons the Court has already expressed, however, the second amended complaint, like its predecessors, was perfectly clear that the December 2008 MSA is the one in issue. (Doc. 188). National was not left to guess, and its election to ignore the December 2008 MSA was made at its peril.[2]

National argues that the language in the June 2007 MSA also appears in the online terms and conditions that are part of the purchase order and thus part of the relevant contract. (Doc. 121 at 6, 16). The plaintiffs respond that, pursuant to the terms of the purchase order, the relevant terms and conditions are not those appearing online but those appearing in the December 2008 MSA. (Doc. 133 at 7, 12-13).

The purchase order provides that the online terms and conditions apply, but only "[u]nless expressly subject to a written agreement signed by both Buyer and Supplier." (Doc. 1-1 at 4, 5). The December 2008 MSA – which apparently addresses most if not all of the matters addressed in the online terms and

---

[2] Moreover, the Court cannot consider the 2007 MSA without converting National's motion into one for summary judgment, which it declines to do. "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment *only if* the attached document is: (1) central to the plaintiff's claim; and (2) *undisputed*." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (emphasis added). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id*. The authenticity of a document is challenged, *inter alia*, when the plaintiff disputes whether the document is the one "referred to in his complaint." *Id*. at 1135. Viewing the matter most favorably to National, that is the situation presented here.

Even were the 2007 MSA properly before the Court, both sides present documents beyond the complaint in an effort to show that their preferred version of the MSA is the one actually made part of the contract. The Court cannot consider such materials without converting National's motion into one for summary judgment, Fed. R. Civ. P. 12(d), which it declines to do.

conditions – appears to be signed by GP (or a related entity) and S&S. (*Id*. at 6-9). Moreover, the purchase order also provides that "[t]he terms and conditions of Georgia-Pacific's Form 7141 shall supersede those herein and apply as the terms and conditions of this purchase order," (*id*. at 3), and the December 2008 MSA indicates on its face that it is a Form 7141. (*Id*. at 6).[3] The plaintiffs rely on the quoted language. If the plaintiffs are correct and the online terms and conditions do not apply, National's argument cannot succeed. The parties' arguments in favor of their respective positions rest in part on the content of various documents beyond the pleadings.

For reasons set forth in note 2, *supra*, the Court thus cannot resolve this issue without converting National's motion to dismiss into a motion for summary judgment, which the Court declines to do.

**II. Bad Faith.**

The parties agree as to the elements of a normal bad faith claim under Alabama law: (1) a breach of an insurance contract; (2) the intentional refusal to pay a claim; (3) the absence of an arguable reason for the refusal; and (4) the insurer's knowledge of the absence of an arguable reason for the refusal. They also agree that a claim of abnormal bad faith includes a fifth element: the intentional failure to determine whether there is an arguable basis for the refusal. (Doc. 121 at 21; Doc. 133 at 14). National argues the plaintiffs cannot satisfy the first, third or fifth element. (Doc. 121 at 21-25).

National's argument as to the first element depends on the success of its motion to dismiss the contract claim. (Doc. 121 at 21). Because National's motion to dismiss that claim is due to be denied, it cannot obtain dismissal of the bad faith claims for want of a breach of contract.

---

[3] National admits that the December 2008 MSA is a Form 7141. (Doc. 143 at 9-10).

4

National's argument as to the third element is premised upon the applicability of the provisions of the June 2007 MSA and the online terms and conditions. (Doc. 121 at 22). Because National has not established this premise, neither has it negated the plaintiffs' ability to satisfy this element of their bad faith claims.

As to the fifth element, National argues that, pursuant to the terms of its policy, it had no duty to investigate until and unless all underlying insurance was exhausted by payment, which it says never occurred. (Doc. 121 at 23-25). This argument fails for reasons stated in the Court's order denying the substantively identical argument of defendant Aspen Specialty Insurance Company. (Doc. 193 at 7-9). In short, the complaint alleges that National denied coverage, and that denial triggered a duty implied by law, independent of any contractual duty, to make the coverage decision in good faith – including, in the context of an abnormal bad faith claim, to conduct a legally sufficient investigation and cognitive review before denying coverage.

## III. Negligence.

In a brief two sentences, National argues that "Alabama does not recognize a separate negligence cause of action for the breach of a duty created by contract." (Doc. 121 at 25-26). It appears that Alabama law is a bit more nuanced than that pronouncement would suggest, *see, e.g., Morgan v. South Central Bell Telephone Co.*, 466 So. 2d 107, 114 (Ala. 1985), and National's cursory treatment of the issue is insufficient to demonstrate as a matter of law that the plaintiffs have not stated a claim.

Moreover, Count Two alleges in part a negligent failure to settle, (Doc. 182 at 18), and, as the plaintiffs note, (Doc. 133 at 23-24), the cases are legion that such a cause of action exists under Alabama law.

In its reply brief, National argues the plaintiffs cannot maintain a claim for negligent failure to settle because they were not, and cannot be, subject to

judgment (since the underlying lawsuit was concluded by settlement). (Doc. 143 at 13). No such argument appears in National's principal brief; indeed, that brief fails to recognize the existence of a claim for negligent failure to settle, even though such a claim is articulated explicitly in the complaint. Because National identifies no excuse for not asserting this argument in its principal brief, the Court will follow its general rule of not considering arguments first raised in reply.

## CONCLUSION

For the reasons set forth above, National's motion to dismiss is **denied**.[4]

DONE and ORDERED this 25th day of April, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] For the reasons set forth above and in its previous order, (Doc. 188), National's motion to dismiss the third amended complaint, (Doc. 187), is also **denied**.