IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, etc., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 15-0342-WS-B ) |
| ZURICH AMERICAN INSURANCE COMPANY, etc., et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion for partial summary judgment. (Doc. 245). The interested parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 246-47, 274, 278-79, 285, 289-91, 306-08, 334), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied.

## BACKGROUND

According to the third amended complaint, (Doc. 182) ("the complaint"), plaintiff Georgia-Pacific Consumer Products LP ("Consumer Products") operates a paper mill facility in Choctaw County. Defendant S&S Sprinkler Co. ("S&S") contracted with Consumer Products to perform work at the facility, in the course of which an employee of S&S was killed. As part of the contract, S&S agreed to obtain insurance in favor of Consumer Products and its officers and agents (including the individual plaintiff). S&S contracted with Defendants Turner Insurance and Bonding Company, Inc. ("Turner") and CRC Insurance Services, Inc. ("CRC") to obtain insurance satisfying S&S's contractual obligation. Defendants Aspen Specialty Insurance Company ("Aspen") and National Union

Fire Insurance Company of Pittsburgh, Pa. ("National") each issued an excess/umbrella policy but refused to investigate the matter or provide coverage and refused to participate in the ultimate settlement of the underlying lawsuit.

While the complaint asserts ten counts against various groupings of defendants, the instant motion seeks partial summary judgment only with respect to Count V, a claim against S&S for breach of contract of indemnity. (Doc. 182 at 21-22; Doc. 245 at 1).[1] S&S, Aspen and National all oppose the motion.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v.*

---

[1] The plaintiff's reference to the contractual indemnity claim as "Count One," (Doc. 245 at 1; Doc. 246 at 30), is plainly a scrivener's error.

*Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

3

exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

The decedent was on site in connection with an April 2014 purchase order to install a sprinkler system ("the Purchase Order"). (Doc. 247-1 at 4-6). The parties agree that the Purchase Order forms at least part of the relevant contractual relationship between Consumer Products and S&S. No indemnity provision appears within the four corners of the Purchase Order; the indemnity provision on which the plaintiffs rely is contained within a Master Service Agreement executed in December 2008 ("the 2008 MSA"). (Doc. 182 at 6; Doc. 247-1 at 15). While the parties devote the lion's share of their briefing to whether the indemnity provision has been breached, the threshold question is whether the 2008 MSA was part of the relevant contractual relationship.[3] To uphold the affirmative, the plaintiffs invoke the doctrine of incorporation by reference. (Doc. 246 at 20; Doc. 334 at 13, 14).

The litigants agree that Delaware law governs the construction of the 2008 MSA. This is unsurprising, since the 2008 MSA expressly provides that it is to be construed and interpreted under Delaware law. (Doc. 247-1 at 15). The litigants also cite Delaware law in support of their arguments regarding whether the Purchase Order incorporates the 2008 MSA by reference. (Doc. 285 at 22-23; Doc. 334 at 13). The Purchase Order, however, has no choice-of-law provision, the parties have identified no evidence that the Purchase Order was executed in Delaware, and they have presented no argument why Delaware law would apply to the Purchase Order. It seems clear Delaware law cannot apply to the Purchase

---

[3] Because Aspen's brief does not address this issue, the Court confines its discussion to the briefs of the other interested parties.

Order simply because it applies to the 2008 MSA – especially when the question is the necessarily antecedent one of whether the 2008 MSA is part of the Purchase Order to begin with. Because the litigants also cite Alabama law, and because there are indications that one or both parties executed the Purchase Order in Alabama, (Doc. 246 at 5-6), the Court – without reaching any final conclusion regarding choice of law – utilizes Alabama law in construing the Purchase Order.

The Purchase Order identifies only a few specific terms and conditions,[4] but it references "terms and conditions" in three places. Two of these references employ identical language:

> **Terms and Conditions**: Unless expressly subject to a written agreement *signed by both Buyer and Supplier*, Supplier acknowledges that it has reviewed Buyer's "Terms and Conditions of Purchase", available at Buyer's website … (the "GP Terms and Conditions") and that purchases of goods and/or services by GP are subject to the GP Terms and Conditions. Buyer reserves the right to modify the GP Terms and Conditions at any time without prior notice and the current version shall supersede all prior versions upon posting to Buyer's website.

(Doc. 247-1 at 4, 6 (emphasis added)).

The third reference reads as follows:

> The terms and conditions of Georgia-Pacific's *Form 7141* shall supercede [sic] those herein and apply as the terms and conditions for this purchase order.

(*Id*. at 5 (emphasis added)). The plaintiffs, noting that the latter provision purports to supersede the former, rely on the latter provision.[5]

In construing a contract, the "threshold issue" is "whether the contract is ambiguous." *Certain Underwriters at Lloyd's, London v. Southern Natural Gas*

---

[4] Provisions for payment terms, emergency shipments, right to audit, and compliance with governmental safety codes, (Doc. 247 at 4-5), presumably constitute terms and conditions.

[5] The defendants concede, or at least assume, that the former provision (which appears to exclude the 2008 MSA (since it was not signed by Consumer Products)) can be in play only if the latter provision is first eliminated from consideration.

*Co.*, 142 So. 3d 436, 453 (Ala. 2013) (internal quotes omitted). "The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Insurance Co. v. H & H Stephens Construction, Inc.*, 939 So. 2d 868, 873 (Ala. 2006) (internal quotes omitted). "If the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law." *Id.* (internal quotes omitted). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Doster Construction Co. v. Marathon Electrical Contractors, Inc.*, 32 So. 3d 1277, 1283 (Ala. 2009) (internal quotes omitted). Conversely, "terms are unambiguous [when they are] susceptible of only one reasonable meaning." *Id.* (internal quotes omitted).

As applied here, the threshold question is whether "Form 7141" is reasonably susceptible of any meaning other than "the 2008 MSA." If it is not, then the 2008 MSA is incorporated by reference into the Purchase Order. The plaintiffs argue that the Purchase Order is unambiguous because the 2008 MSA is a completed form numbered "07141." (Doc. 246 at 20). S&S, however, notes that the 2008 MSA is actually a completed form numbered "07141PO." (Doc. 247-1 at 13). According to Consumer Products' 30(b)(6) representative, "there's a difference between 7141 form and 7141-PO." (Doc. 291-1 at 51).[6] S&S concludes that "Form 7141" does not refer to the 2008 MSA or that, at the least, the provision is ambiguous in this regard. (Doc. 285 at 10, 12, 22, 23).

The plaintiffs in their reply do not address the distinction between form 7141 and form 7141PO. Instead, they point out that another MSA, dated June 2007 and signed on behalf of S&S on the one hand and Georgia-Pacific, LLC and its U.S. subsidiaries on the other ("the 2007 MSA"), is on the same form (*i.e.*, 7141PO) as the 2008 MSA. (Doc. 290-1 at 32). The plaintiffs argue that these are the only agreements regarding terms and conditions between Consumer Products

---

[6] S&S purports to rely on two pages from the witness's deposition, but it placed only one of them in the record.

6

and S&S, so "Form 7141" must refer to one of them. Since both the 2007 MSA and the 2008 MSA contain the same indemnity provision, the plaintiffs conclude the defendants' argument is a tempest in a teapot. (Doc. 334 at 13). In a similar vein, the plaintiffs argue that the defendants have failed to demonstrate that form 7141, even though it may differ in some respects from form 7141PO, contains an indemnity provision different from that in form 7141PO. (*Id*.).

The plaintiffs' argument, however, leaves intact the defendants' evidence that form 7141 is not the same thing as form 7141PO. And if form 7141 and form 7141PO are different things, it cannot easily be assumed that the parties meant the latter when saying the former. The Court thus agrees with the defendants that the Purchase Order is ambiguous in this regard.[7]

The parties have not addressed where the Court goes from here. According to the Alabama Supreme Court, "[i]f the trial court finds the contract to be ambiguous, it must employ established rules of contract construction to resolve the ambiguity. [citation omitted] If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise," permitting the consideration of extrinsic evidence. *Lloyd's*, 142 So. 3d at 454 (internal quotes omitted). "Where factual issues arise, the resolution of the ambiguity becomes a task for the jury." *Id*.; *accord Extermitech, Inc. v. Glasscock, Inc.*, 951 So. 2d 689, 694-95 (Ala. 2006). Thus, the plaintiffs may still obtain summary judgment as to the applicability of the 2008 MSA if application of Alabama rules of construction resolve the ambiguity favorably to them.

---

[7] The Court notes that the plaintiffs' argument could not avail them in any event, because their motion for partial summary judgment is explicitly restricted to the proposition that the 2008 MSA supplies the terms and conditions. (Doc. 246 at 2, 4-11, 20-21). Even if resort to the 2007 MSA, or to form 7141, would lead to an identical indemnity provision, neither document is the subject of the instant motion, and thus neither can support relief. For that matter, neither the 2007 MSA nor form 7141 is the subject of the complaint, which weds the plaintiffs' claim for indemnity to the 2008 MSA. (Doc. 182 at 6-8, 21-22).

The parties are lean on rules of contract construction and heavy on extrinsic evidence. The only rule of contract construction asserted by the plaintiffs (quoting Delaware law) is that a court "must give effect to all terms of the instrument." (Doc. 334 at 13). This is basically a correct statement of Alabama law, *e.g., Extermitech*, 951 So. 2d at 694, but the plaintiffs fail to explain its applicability here. The plaintiffs assume that, if "Form 7141" does not mean the 2008 MSA, it means "nothing," (Doc. 334 at 13), but that is far from obvious, especially given the plaintiffs' concession that there is such a thing as a form 7141.

As for the defendants, National reminds the Court that plain language is to be given its plain meaning, (Doc. 278 at 15-16), while S&S proposes that "any ambiguity in the [Purchase Order] should be construed in S&S's favor." (Doc. 285 at 23). Both assertions are based on Delaware law. National's proposition appears to be roughly consonant with Alabama law, *e.g., Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998), but the rule of *contra proferentem* is decidedly more nuanced than S&S presents it. *See, e.g., FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344 (Ala. 2005).[8] The defendants consider these rules decisive and as compelling a ruling that "Form 4171" does not mean the 2008 MSA. Neither, however, has moved for a summary judgment that the 2008 MSA does not apply, and they will not obtain one *sua sponte*. Nor, given the parties' almost complete failure to address meaningfully these or any other rules of contract interpretation, would the Court be inclined to wade into such issues unassisted.

What remains is a welter of competing extrinsic evidence offered by the parties to bolster their contrary positions concerning whether Consumer Products and S&S intended the 2008 MSA to be incorporated by reference into the Purchase Order. The evidence and the inferences to be drawn therefrom are in hot dispute. As noted, when rules of interpretation fail to resolve ambiguity and

---

[8] This includes the caveat that it is a rule of last resort. *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000).

extrinsic evidence is offered to resolve it, the resulting factual issues are for the consideration of the jury.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for partial summary judgment is **denied**.[9]

DONE and ORDERED this 23rd day of September, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] S&S's motion to strike portions of the plaintiffs' reply brief, (Doc. 343), is **denied as moot**.