IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, etc., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 15-0342-WS-B ) |
| ZURICH AMERICAN INSURANCE COMPANY, etc., et al., | ) ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the objection of defendant National Union Fire Insurance Company of Pittsburgh ("National"). (Doc. 418). National objects to a ruling of the Magistrate Judge, (Doc. 391), denying National's motion to compel. (Doc. 318). The plaintiffs have filed a response, (Doc. 444), and the matter is ripe for resolution.

"A judge of the court may reconsider any pretrial matter [on a non-dispositive issue] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). National's objection – which is confined to the Magistrate Judge's rulings regarding requests for production 11, 12 and 14 – is lodged pursuant to these provisions.

As the Court has repeatedly noted, [t]he 'clearly erroneous or contrary to law' standard of review is extremely deferential. ... Relief is appropriate under the 'clearly erroneous' prong of the test only if the district court finds that the Magistrate Judge abused [her] discretion or, if after reviewing the record as a

whole, the Court is left with a definite and firm conviction that a mistake has been made. ... With respect to the 'contrary to law' variant of the test, an order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Cordova v. R&A Oysters, Inc.*, 2016 WL 3102224 at *1 (S.D. Ala. 2016) (internal quotes omitted). The Court has also noted that, "[i]n reviewing a magistrate judge's nondispositive ruling, this Court does not consider matters not placed before that judge." *White v. Thyssenkrupp Steel USA, LLC* (S.D. Ala. 2010) (internal quotes omitted).

**I. Request for Production 11.**

National requested that the plaintiffs "[p]roduce a complete copy of the Lithium Project File referenced by Steven Motiff during his deposition on June 9, 2016." (Doc. 301-1 at 17). The plaintiffs initially resisted production but eventually produced (after National limited the request to documents related to defendant S&S Sprinkler, LLC ("S&S")) what they say are all responsive documents. The Magistrate Judge denied National's motion to compel on the grounds that "all responsive documents relating to S&S have been produced." (Doc. 391 at 5).

National disagrees with the Magistrate Judge's finding. National points to the deposition testimony of the plaintiffs' witness that the file – which contained "an enormous amount of information" regarding every vendor on the large, three-facility project – includes "[q]ualification forms, POs, insurance certificates [and] bid package information." (Doc. 301-1 at 65). Specific to S&S, the witness testified that the 2008 MSA was included in the project file and that he believes the two Greer letters also were included in the file. (Doc. 331 at 22-23).

National admits that the plaintiffs have produced the Greer letters but complains that the specimens produced bear S&S's Bates-stamp numbers and deposition exhibit numbers, demonstrating that the copies the plaintiffs produced did not come directly from the project file. From this, National concludes that the

plaintiffs "have not produced any documents in response to" its request. (Doc. 418 at 3). This is a non sequitur. Any failure to produce the Greer letters could not prove that other responsive documents exist but were not produced; indeed, the plaintiffs informed the Magistrate Judge – without denial or objection from National – that they had produced S&S's purchase orders from the lithium project. (Doc. 318 at 8). That the witness testified that the file includes various sorts of documents does not establish that the file includes those sorts of documents specifically with respect to S&S, and National identifies not a single document it suspects is in the project file that has not been produced. As for the Greer letters, National has not explained how it could possibly matter that, instead of producing two letters copied directly from the project file,[1] the plaintiffs produced presumably identical copies of the same documents taken from S&S's files.

The bottom line is this: The plaintiffs, through counsel, have repeatedly confirmed that all responsive documents have been produced, the Magistrate Judge has found this representation to be accurate, and National has done nothing to show that her finding is clearly erroneous. The Magistrate Judge's denial of National's motion to compel as to Request for Production 11 is thus **affirmed**.

## II. Request for Production 12.

National requested production of "the contract file relating to the June 5, 2007 MSA and Extension Letter Agreement dated June 4, 2012 …." (Doc. 301-1 at 17). The plaintiffs refused to produce any responsive documents. The Magistrate Judge denied National's motion to compel on the grounds that the documents are neither relevant nor proportional. (Doc. 391 at 6).

National concedes that the Magistrate Judge "may not be aware of how hotly contested this issue is," and it asks the Court to draw upon its broader

---

[1] The plaintiffs assert that the witness is mistaken and that the Greer letters are not in the project file. (Doc. 318 at 9; Doc. 444 at 4).

awareness of the parties' factual and legal arguments in this action as a basis for reversing her ruling. (Doc. 418 at 4). That is not how the system works. In order to obtain reversal, National must show that, based on the parties' presentation *to the Magistrate Judge*, her ruling is clearly erroneous or contrary to law. National has not attempted such a showing, and its superficial briefing before the Magistrate Judge – six lines on principal brief and ten lines in reply – reflects that it could not do so. National's failure to present adequate facts and argument to the Magistrate Judge dooms its bid to place her in error. The Magistrate Judge's denial of National's motion to compel as to Request for Production 12 is **affirmed**.

### III.  Request for Production 14.

National requested production of "a complete copy of all MSA's for any contractor performing work in the Chemical Process Safety area described by Kenneth Littles on page 202 of his deposition transcript after 'the incident at the GP Naheola facility back in the early 2000s' as described on page 204 of Kenneth Littles's deposition transcript." (Doc. 301-1 at 18). The plaintiffs produced the MSA for Burkes Mechanical, (Doc. 331 at 6), but refused to produce any others. The Magistrate Judge denied National's motion to compel "[f]or the reasons set forth with respect to production requests Nos. 2, and 12." (Doc. 391 at 7).

As noted, the Magistrate Judge denied the motion to compel as to request 12 because the request was not relevant or proportional. She denied the motion as to request 2 for failure to show proportionality, specifically, failure to "establis[h] the importance of the requested documents." (Doc. 391 at 4).

From National's perspective, one of the critical questions in this lawsuit is whether its insured (S&S) was required to have $10 million of insurance in place (which could trigger National's second-tier excess insurance) or only $3 million (which could not). Plaintiffs' counsel elicited testimony from the plaintiffs' purchasing department manager that all contracts in the chemical process safety

area ("CPSA") (essentially, the area from the back of the paper machines all the way to the river) trigger a $10 million requirement because it is a high-risk area (including from potential hydrogen sulfide releases, one of which occurred in the early 2000's). (Doc. 301-1 at 42-44, 49-50). The subject contract involved work in this area, and the plaintiffs assert that S&S was required to have $10 million in insurance to perform the contract. Insurance requirements are addressed in MSA's applicable to various contractors. All of this was set forth in support of National's motion to compel. (Doc. 301 at 2-3, 4-5, 7-8; Doc. 331 at 6, 9-10).

As National explained to the Magistrate Judge, it sought to test the deponent's testimony by reviewing MSA's from other contractors working in the CPSA to see if they in fact require $10 million in insurance as the plaintiffs assert. (Doc. 331 at 6, 9-10). National noted that the Burkes Mechanical MSA, which involved work in the CPSA (indeed, in essentially the same location as S&S's work), requires insurance of only $3 million. (*Id*.). National also argued that a $10 million requirement was inconsistent with the plaintiffs' insurance guidelines matrix. (Doc. 301 at 8; Doc. 301-1 at 59-61). Before the Magistrate Judge, the plaintiffs responded that the matrix is only a guideline and that there is thus no inconsistency between the guideline and the deponent's testimony. They also presented a declaration to establish that complying with the request would be unduly burdensome. (Doc. 318 at 5-6, 11-12).[2]

Because the minimum amount of insurance required is a central issue in this case, the veracity of the plaintiffs' elicited testimony that $10 million is always required for contracts performed in the CPSA is relevant, and a review of the MSA's of other contractors performing work in that area is relevant to the credibility of the deponent's testimony.

---

[2] Before the Court, the plaintiffs argue that the provisions of National's policy are worded such as to render it a "moot point" what any other MSA's provide. (Doc. 444 at 8-11). Because the plaintiffs made no such argument before the Magistrate Judge, it will not be considered herein.

The Magistrate Judge concluded the requested documents are unimportant for purposes of Rule 26(b)(1) because: (1) the parties' obligations must be determined by their own contract, not that of others; and (2) the deponent admitted he does not know of any contractor working in the CPSA being required to have $10 million in insurance or of any documents reflecting that any contractor was so required. (Doc. 391 at 4).

As National argues, blanks in the document addressing S&S's insurance requirements introduce questions concerning those requirements with respect to the subject purchase order; until the parties' exhaustive dispositive motions are resolved, it is impossible to say that the contract documents themselves will resolve the issue without resort to extrinsic evidence. Moreover, it was the plaintiffs that injected the assertion that all contracts to be performed within the CPSA must be backed by $10 million in insurance and, in opposing the motion to compel, they did not deny the centrality of this assertion to resolution of the minimum limits issue. For these reasons, the existence of a contract with S&S does not render the requested discovery unimportant for purposes of Rule 26(b)(1).

However, the deponent's unawareness of documents reflecting a $10 million requirement (or of contractors being told they had to have $10 million of insurance) reduces – to some extent – the importance of the requested documents. While not as persuasive as documents directly contradicting the deponent's testimony, his admission that he cannot support his testimony undercuts its persuasive value and thus diminishes the importance of further undermining it.

The plaintiffs offered the declaration of the same witness to establish an undue burden in responding to National's request. (Doc. 318-1 at 69-71). The declaration reflects that the plant issues thousands of contracts/purchase orders annually, that these are not filed or otherwise identified by location within the plant, and that it would require the entire manpower of the purchasing department multiple weeks in order to conduct a search for responsive documents, with the

6

results necessarily dubious due to the difficulty or impossibility of identifying the location of the plant in which the work was performed. (Doc. 318-1 at 69-71). National scoffs, (Doc. 331 at 10-11), but the very authorities it cites confirms that the plaintiffs have upheld their burden of showing undue burden. This undue burden would require affirmance of the Magistrate Judge's ruling regardless of any error regarding relevance or importance.

National points out that there must be at least one additional MSA subject to its request, which can be located without undue burden: the one applicable to the entity that completed the work S&S was to perform at the time of the subject incident. (Doc. 331 at 10; Doc. 418 at 6). Before neither the Magistrate Judge nor the Court have the plaintiffs articulated any response to National's argument regarding this MSA; nor did the Magistrate Judge address it. Given the residual importance of negating the deponent's testimony, the plaintiffs' own emphasis on narrowing the focus to the precise area in which the subject incident occurred,[3] and the absence of any burden on the plaintiff of complying with the request, the Court concludes that, as to this MSA only, the Magistrate Judge's ruling is clearly erroneous and/or contrary to law.

For the reasons set forth above, the Magistrate Judge's denial of National's motion to compel as to Request for Production 14 is **reversed** with respect to the MSA described in the preceding paragraph and is otherwise **affirmed**. The plaintiffs are **ordered** to produce the MSA on or before **November 30, 2016**.

DONE and ORDERED this 23rd day of November, 2016.

                                         s/ WILLIAM H. STEELE
                                         CHIEF UNITED STATES DISTRICT JUDGE

---

[3] (Doc. 318-1 at 70; Doc. 331 at 10).