IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, etc., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 15-0342-WS-B ) |
| ZURICH AMERICAN INSURANCE COMPANY, etc., et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

The remaining parties have filed a total of seven motions for summary judgment. Briefing (including on the associated motions to strike) exceeds 900 pages. The Court therefore will address the motions piecemeal. This order addresses the threshold issue of what documents constitute the contract between the entity plaintiff ("the plaintiff")[1] and defendant S&S Sprinkler Co. ("S&S").[2] Familiarity with the underlying facts and issues is assumed.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no

---

[1] References to the plaintiff in the singular are to the entity plaintiff, while references to the plaintiffs in the plural are to both plaintiffs.

[2] Other parties mentioned herein include defendants Aspen Specialty Insurance Company ("Aspen") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National").

genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

The decedent was on site in connection with an April 2014 purchase order to install a sprinkler system ("the Purchase Order").  (Doc. 348-7 at 2-4).  The parties agree that the Purchase Order forms at least part of the relevant contractual relationship between the plaintiff and S&S.  No indemnity provision or insurance requirement appears within the four corners of the Purchase Order; the provisions on which the plaintiffs rely are contained within a Master Service Agreement executed in December 2008 ("the 2008 MSA").  (Doc. 182 at 6-8).

The Purchase Order addresses terms and conditions in several ways.  First, the Purchase Order includes the following provision on its first page:

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

> **Terms and Conditions**:  Unless expressly subject to a written agreement signed by both Buyer and Supplier, Supplier acknowledges that it has reviewed Buyer's "Terms and Conditions of Purchase", available at Buyer's website … (the "GP Terms and Conditions") and that purchases of goods and/or services by GP are subject to the GP Terms and Conditions.  Buyer reserves the right to modify the GP Terms and Conditions at any time without prior notice and the current version shall supersede all prior versions upon posting to Buyer's website.

(Doc. 348-7 at 2).  Second, the Purchase Order contains the following provision on its second page:

> The terms and conditions of Georgia-Pacific's Form 7141 shall supercede [sic] those herein and apply as the terms and conditions for this purchase order.

(*Id*. at 3).  Third, the Purchase Order on its third page repeats verbatim the quoted provision appearing on its first page.  (*Id*. at 4).  Finally, the Purchase Order itself articulates several terms and conditions, addressing such matters as payment terms, emergency shipments, right to audit and compliance with governmental safety codes.  (*Id*. at 2-3).

In its order denying the plaintiffs' previous motion for partial summary judgment as to Aspen, the Court tentatively concluded that construction of the Purchase Order is governed by Alabama law, based on evidence the Purchase Order was entered in Alabama for work to be performed in Alabama.  (Doc. 349 at 4-5).  "Alabama follows the traditional view that a contract is governed as to its nature, obligation, and validity by the law of the place where it was made, unless the parties intend the law of some other place to govern, or unless it is to be wholly performed in some other place."  *Ex parte Owen*, 437 So. 2d 476, 481 (Ala. 1983).   No party has disputed that Alabama law governs construction of the Purchase Order; on the contrary, S&S acknowledges that "[t]he P.O. was prepared by GP in Alabama, sent to S&S in Alabama for work to be performed in Alabama." (Doc. 361 at 15). The Court therefore continues to employ Alabama law in construing the Purchase Order.

4

In construing a contract, the "threshold issue" is "whether the contract is ambiguous." *Certain Underwriters at Lloyd's, London v. Southern Natural Gas Co.*, 142 So. 3d 436, 453 (Ala. 2013) (internal quotes omitted). "The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Insurance Co. v. H & H Stephens Construction, Inc.*, 939 So. 2d 868, 873 (Ala. 2006) (internal quotes omitted). "If the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law." *Id*. (internal quotes omitted). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Doster Construction Co. v. Marathon Electrical Contractors, Inc.*, 32 So. 3d 1277, 1283 (Ala. 2009) (internal quotes omitted). Conversely, "terms are unambiguous [when they are] susceptible of only one reasonable meaning." *Id*. (internal quotes omitted).

**I. Competing Provisions within the Purchase Order.**

The plaintiffs and the insurer defendants focus their attention on the second provision, which mentions "Form 7141." S&S, however, argues that this provision never comes into play. Its argument proceeds as follows: To resolve an ambiguity between two seemingly inconsistent terms, a court must first attempt to reconcile the provisions. If that effort fails, the court must employ Alabama rules of construction, including the rule that the first stated provision controls over a later, inconsistent provision. Finally, if other rules of construction do not resolve the ambiguity, the court is to resolve the ambiguity against the drafter. (Doc. 361 at 15-17; Doc. 434 at 6-11). S&S applies its argument as follows.

The first and third provisions regarding terms and conditions need not be reconciled, since they are identical. S&S argues that the second provision should be reconciled with the others by requiring that the "Form 7141" referenced in the second provision be "signed by both Buyer and Supplier" as required by the first and third provisions, failing which the online terms and conditions will apply as

stated in those provisions.  S&S asserts that neither the 2008 MSA nor the 2011 amendment to the 2008 MSA (which extended its reach to all Georgia-Pacific subsidiaries, including the plaintiff) was signed by the plaintiff.  S&S concludes that, even if "Form 7141" refers to the 2008 MSA, that MSA is not a written agreement signed by the plaintiff (the buyer under the Purchase Order) and S&S, with the result that the online terms and conditions control rather than those expressed in the 2008 MSA.[4]

Should the Court reject that analysis and not require that the Form 7141 be signed by the plaintiff, S&S argues that the ambiguity introduced by the presence of two conflicting provisions regarding terms and conditions should be resolved in favor of the first provision, since it appears first in the Purchase Order, with the result that the online terms and conditions control.  And should the Court reject that analysis, S&S proposes that the Court resolve the ambiguity by construing the Purchase Order against the plaintiff, as its drafter, and apply the online terms and conditions on that basis.

The Court has no quarrel with S&S's statement of Alabama law as far as it goes,[5] but it cannot agree with its proposed application.  The rules invoked by S&S are employed to resolve an ambiguity created by two conflicting provisions within a written agreement; when the parties, by language used in that agreement, have themselves resolved any ambiguity by expressly designating how the provisions interrelate, no ambiguity remains for judicial resolution.  That is the situation here, with the second provision declaring that its terms and conditions "shall super[s]ede those herein and apply as the terms and conditions for this

---

[4] The plaintiffs argue obscurely that the 2011 amendment was in fact signed by the plaintiff.  (Doc. 408 at 20 & n.7).  That conclusion is debatable but, given the Court's resolution of S&S's argument, it is unnecessary to consider the plaintiffs' interpretation.

[5] *See, e.g., Extermitech, Inc., v. Glasscock, Inc.*, 951 So. 2d 689, 694 (Ala. 2006).

purchase order." (Doc. 348-7 at 3). The Court cannot use S&S's proposed rules of construction to resolve an ambiguity that does not exist.

In its reply brief, S&S argues that "herein" refers only to the specific terms and conditions set forth in the body of the Purchase Order. (Doc. 434 at 9 n.6). Because the first and third provisions do not set forth any terms and conditions but only direct the reader to another (online) source of terms and conditions, S&S concludes that the second provision does not supersede them. This argument comes too late to be considered,[6] but it would not aid S&S even had it been timely raised.

Focusing on a single word, S&S ignores the balance of the sentence, which eliminates S&S's spurious ambiguity. First, no language preceding "herein" restricts its reach to terms and conditions *set forth* in the Purchase Order as opposed to *identified* in the Purchase Order; the former construction is entirely S&S's invention. Second, the language following "herein" leaves no possible room for S&S's proposed construction, as it expressly states that, as a result of the supersession, the terms and conditions set forth in Form 7141 "apply as the terms and conditions for this purchase order." This language patently establishes Form 7141 as the exclusive source of terms and conditions governing the Purchase

---

[6] "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining rationale). The Court has repeatedly invoked the rule in this very lawsuit, so S&S cannot be ignorant of it. *Georgia-Pacific Consumer Products LP v. Zurich American Insurance Co.*, 2016 WL 1659917 at *1 (S.D. Ala. 2016); *Georgia-Pacific Consumer Products LP v. Zurich American Insurance Co.*, ___ F. Supp. 3d ___, 2016 WL 1611484 at *2 n.4 (S.D. Ala. 2016). Indeed, S&S has itself invoked the rule against the plaintiffs. (Doc. 343). Had the plaintiffs, in opposition to S&S's motion, presented some argument that made S&S's argument available or relevant for the first time, S&S would be within its rights to raise it on reply, but S&S admits the plaintiffs did not do so. (Doc. 434 at 9 n.6).

Order.  Necessarily, then, *all* competing terms and conditions are superseded, whether set forth in the Purchase Order or referenced therein.[7]

In summary, the Purchase Order unambiguously establishes "[t]he terms and conditions of Georgia-Pacific's Form 7141" as those governing the Purchase Order.  S&S's arguments to the contrary are rejected for the reasons stated above.

## II. "Form 7141."

The question becomes one of identifying "Form 7141."  The plaintiffs describe the Purchase Order's reference to Form 7141 as incorporating that document by reference.  (Doc. 348 at 17).  The defendants disagree that the document incorporated was the 2008 MSA, but they do not dispute that the Purchase Order purports to incorporate some document by reference.  When the identity of the document incorporated by reference is unclear but could reasonably refer to a proposed document, the contract's incorporation term is ambiguous.  *See Hyde v. Humana Insurance Co.*, 598 So. 2d 876, 877, 880 (Ala. 1992) (where an insurance policy provided that approval of payment for a transplant would be "based on written criteria and procedures established by our Medical Affairs Department" but did not specifically refer to a document styled "Humana Health Care Division Transplant Coverage Criteria," the policy was ambiguous as to whether this document was incorporated).

### A. Ambiguity.

Aspen and S&S assert that "Form 7141" cannot reasonably be read as intending the 2008 MSA because that document contains a footer reading

---

[7] In direct opposition to S&S, National correctly insists that the superseded terms and conditions include the online terms and conditions.  (Doc. 340 at 5, 29, 32; Doc. 400 at 11).

8

"07141PO" rather than "7141" or "07141." (Doc. 348-4 at 4-9).[8] As the plaintiffs note, however, the 2008 MSA includes an "Addendum No. 1 to 7141," executed the same date as the main document, by the same individuals on behalf of the same contracting parties. (*Id*. at 10-11). Because the parties at the time of contracting expressly referred to the 2008 MSA as "7141," it is clear that the term "Form 7141" can reasonably be read as referring to the 2008 MSA.[9]

The plaintiffs argue that "Form 7141" under the Purchase Order unambiguously refers to the 2008 MSA. They note that Alabama law requires a court to construe all terms of a written instrument together and to reconcile all contractual provisions if possible. If the two documents are "read together as equals playing two different roles in the same one agreement," they say, any ambiguity melts away and it becomes clear beyond peradventure that the 2008 MSA supplies the terms and conditions governing the Purchase Order. (Doc. 408 at 19-24 & 20 n.6).

As certain defendants point out, the plaintiffs are placing the cart before the horse; they ask the Court to consider the 2008 MSA as part of the contract in order to determine that the 2008 MSA is part of the contract. They cite no authority that approves of such an approach,[10] which the Court thus declines to follow.

Nor would consideration of the 2008 MSA remove the ambiguity. The plaintiffs find it dispositive that the 2008 MSA contemplates the issuance of future

---

[8] National, in contrast, for purposes of the pending motions "does not dispute that 7141 and 7141PO are the same form." (Doc. 400 at 17 n.9).

[9] Aspen denies that the addendum refers to the 2008 MSA, on the grounds that the addendum "amend[s] the Service Agreement dated 12/15/08," (Doc. 348-4 at 11), while the 2008 MSA is a "*master* service agreement." (Doc. 429 at 8 n.12 (emphasis added)). Given that the addendum expressly refers to a service agreement entered December 15, 2008 and that there is no other service agreement between the plaintiff and S&S entered on that date, Aspen's suggestion is untenable. The addendum unambiguously refers to the 2008 MSA.

[10] In the plaintiffs' cited cases, there was no question as to which documents formed the contract.

purchase orders.  That, however, is what any MSA contemplates, as the plaintiffs' own authority notes,[11] so it hardly eliminates all other documents as "Form 7141."

The defendants identify two documents other than the 2008 MSA as potentially being the "Form 7141" identified in the Purchase Order:  (a) a blank form 7141; and (b) an MSA entered in 2007 ("the 2007 MSA").[12]  Although no blank form 7141 has been introduced into evidence, the plaintiffs admit that such a form exists and that it differs from a form 7141PO. (Doc. 409-20 at 3).  The 2007 MSA, like the 2008 MSA, appears on a form 7141PO, and it contains many of the same provisions as the 2008 MSA.  (Doc. 315 at 102-07).  Looking only to the content of these alternative documents (the 2007 MSA) or their description (the blank form 7141), the Court concludes that "Form 7141" is reasonably susceptible of either alternative meaning.

The field of potential candidates for "Form 7141" is thus limited to three contenders:  the 2008 MSA; the 2007 MSA; and a blank form 7141.  As between these three possibilities, the Purchase Order is ambiguous.[13]

---

[11] *Mobil Oil Corp. v. Schlumberger*, 598 So. 2d 1341, 1345 (Ala. 1992).

[12] Certain defendants suggest that "Form 7141" could refer to a non-existent document.  The Court rejects the suggestion, as it violates the rule that "this Court will interpret the terms of a contract to give effect to all terms used." *The Dunes, L.L.C. v. Bradford*, 966 So. 2d 924, 927 (Ala. 2007) (internal quotes omitted).  Supposing that the contracting parties intended to designate an imaginary document as supplying the terms and conditions is not merely fanciful, it improperly seeks to render an express term of the contract an ineffectual nullity.

[13] The plaintiffs seek to offer extrinsic evidence to "confirm" that "Form 7141" refers to the 2008 MSA and that the Purchase Order is among the purchase orders contemplated by the 2008 MSA.  (Doc. 408 at 24-26).  As they concede, they may do so only if there is an "unambiguous contract" with which the offered evidence is consistent. (*Id*. at 24).  As discussed in text, the Purchase Order is ambiguous as to what constitutes the contract, so extrinsic evidence cannot be offered at this stage.

### B. Rules of Construction.

In its order denying the plaintiffs' previous motion for partial summary judgment as to S&S, the Court noted the general framework for resolving contractual ambiguities. (Doc. 349 at 7). First, "if the trial court finds the contract to be ambiguous, it must employ established rules of contract construction to resolve the ambiguity." *Certain Underwriters at Lloyd's, London v. Southern Natural Gas Co.*, 142 So. 3d 436, 454 (Ala. 2013) (internal quotes omitted). "If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise …." *Id*. "If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity." *Id*. (internal quotes omitted).

The parties offer no relevant rules of construction for defining the ambiguous term, "Form 7141." The plaintiffs invoke three purported rules: (1) construe the contract as a whole; (2) consider the occasion giving rise to the contract, the relations of the parties, and the goal they sought to accomplish; and (3) consider the parties' course of performance and/or dealing. (Doc. 408 at 27-29). These items contribute nothing to the Court's analysis. By "contract as a whole," the plaintiffs mean the Purchase Order plus the 2008 MSA. (*Id*. at 27). That is, the plaintiffs again ask the Court to assume the 2008 MSA is part of the contract in order to find that it is in fact part of the contract, an argument that fares no better here than in Part II.A, *supra*. The other two proposed "rules" are not rules of construction (which focus on the contract language itself) but guides for the consideration of extrinsic evidence, as the plaintiffs' own authorities reflect.

Among the defendants, only S&S even mentions rules of construction, and it does so for the exclusive purpose, as discussed in Part I, *supra*, of showing that

11

the provision mentioning Form 7141 does not control – not for the purpose of showing what "Form 7141" means. (Doc. 361 at 15-17).[14]

Rather than applying rules of construction to identify "Form 7141," the parties proceed directly to the presentation of extrinsic evidence. Indeed, National expressly agrees that "there is a need to resort to extrinsic evidence to answer the 'threshold question'" of "what is Form 7141." (Doc. 388 at 11). Because the parties do not effectively seek resolution of the ambiguity by resort to rules of construction, the Court proceeds to a consideration of the parties' extrinsic evidence.

### C. Extrinsic Evidence.

In previous orders,[15] the Court has noted that, under Alabama law, it is for the jury rather than the Court to resolve ambiguities based on extrinsic evidence. *E.g., Lloyd's*, 142 So. 3d at 454 ("If the application of such rules [of construction] is not sufficient to resolve the ambiguity, factual issues arise …," and "[w]here factual issues arise, the resolution of the ambiguity becomes a task for the

---

[14] In its reply brief, S&S argues for the first time that any ambiguity in the term "Form 7141" should be resolved against the plaintiff, as the drafter of the Purchase Order, under the rule of *contra proferentem*. (Doc. 434 at 7-8). As discussed in note 6, *supra*, this argument comes too late to be considered. Moreover, and as the Court has previously reminded S&S, (Doc. 349 at 8 n.8), the rule can be applied only "if all other rules of contract construction fail to resolve the ambiguity." *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000); *accord FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344, 357 (Ala. 2005) ("[T]he rule of *contra proferentem* is generally a rule of last resort …") (internal quotes omitted). By relying exclusively on *contra proferentem* without first attempting to show that no other rules resolve the ambiguity, S&S is improperly attempting to convert a rule of *last* resort into a rule of *first* resort. S&S's shortcut approach would doom its argument even had it been timely presented.

[15] (Doc. 349 at 7, 8-9; Doc. 387 at 3).

jury.").[16]  If this proposition is correct and exceptionless, and if it applies in this diversity action, neither side can obtain summary judgment once extrinsic evidence is introduced.  The plaintiffs assert the negative.  (Doc. 408 at 27).

The Alabama Supreme Court has clarified that factual disputes resolvable only by the jury do not arise automatically upon the introduction of extrinsic evidence.  Instead, "[i]f … there is no dispute concerning such factual questions, then the trial court should determine the meaning of the contract in light of the undisputed facts."  *Carroll v. LJC Defense Contracting, Inc*., 24 So. 3d 448, 455 (Ala. 2009).  Thus, if all the extrinsic evidence is undisputed, resolution of the ambiguity continues to be a judicial function under Alabama law.

The Court's subject matter jurisdiction over this matter is based exclusively on diversity of citizenship.  (Doc. 182 at 5).  "It is well established in this Circuit that in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question."  *Boeing Co. v. Shipman*, 411 F.2d 365, 368 (5th Cir. 1969) (en banc), *overruled in part on other grounds, Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).  That test is whether there is a genuine issue of material fact.  *Welch v. Celotex Corp*., 951 F.2d 1235, 1237 (11th Cir. 1992).[17]  Thus, "[t]he determination of whether a genuine issue of fact exists and ultimately whether summary judgment is appropriate … is a matter of federal law."  *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1036 n.10 (former 5th Cir. 1982).  "Under *Boeing*, in order to create a jury question, there must be a conflict in substantial evidence."  *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738 (5th Cir. 1980).  In light of these authorities, a party may be

---

[16] *Accord McLemore v. Hyundai Motor Manufacturing, LLC*, 7 So. 3d 318, 327 (Ala. 2008); *Extermitech*, 951 So. 2d at 694-95; *Alfa Life Insurance Corp. v. Johnson*, 822 So. 2d 400, 405 (Ala. 2001).

[17] The current terminology is the functionally equivalent "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

entitled to summary judgment regarding the meaning of "Form 7141" even if one or more technical factual disputes exist, so long as they are not such as to create a genuine dispute as to a material fact.[18]

For a contract term to be ambiguous, it must be reasonably susceptible of more than one meaning. Thus, if the extrinsic evidence rules out two of the three candidates for "Form 7141," the third, as the only remaining reasonable possibility, will necessarily prevail.[19]

### 1. Blank form 7141.

Based on the extrinsic evidence offered and the argument presented in support, "Form 7141" cannot reasonably refer to a blank form 7141.[20] It is uncontroverted that this form is for use "with a contractor who is expected to perform a one-time job," while a form 7141PO is used "with contractors who will be performing POs in the future." (Doc. 409-20 at 3).[21] It is also uncontroverted that the plaintiff and S&S entered many purchase orders after the 2008 MSA was entered, which would not have been done under a form 7141. It is further

---

[18] As the Court has observed, "if the surrounding facts and circumstances admitted only a singular reasonable inference as to interpretation of an ambiguous contractual provision, then summary judgment would seem appropriate." *Ohio Casualty Insurance Co. v. Holcim (US), Inc.*, 744 F. Supp. 2d 1251, 1264 n.16 (S.D. Ala. 2010).

[19] National suggests that, if "Form 7141" is an empty set, the Purchase Order's second provision for terms and conditions simply falls away and the terms and conditions are those designated in the first and third provisions. (Doc. 388 at 13-4 n.8). As discussed in Part I, that result is not possible, because the second provision unambiguously supersedes the first and third provisions, conclusively eliminating them as a source of terms and conditions. Nor can "Form 7141" be an empty set, since at least one of the three initially reasonable candidates will remain a reasonable solution after the extrinsic evidence is considered.

[20] The form would have to be blank, since it is uncontroverted that the plaintiff and S&S never executed a form 7141.

[21] Aspen has moved to strike a different portion of this exhibit, but its motion does not extend to the proposition quoted in text. (Doc. 428).

uncontroverted that, during the year preceding the Purchase Order, the plaintiff and S&S repeatedly executed purchase orders similarly referencing "Form 7141" as the source of terms and conditions. (Doc. 348-5). There has been no evidence offered that the contracting parties intended any of these purchase orders to be the final one between them, and the repetitive issuance of such purchase orders reflects the contrary. Nor has any evidence been offered that the contracting parties intended the Purchase Order to be the final one between them; indeed, it is one of two purchase orders referencing "Form 7141" issued the same day. (*Id*. at 12-13). In short, the extrinsic evidence eliminates any genuine issue of fact as to whether "Form 7141" refers to a blank form 7141, leaving only the 2007 MSA and the 2008 MSA as possibilities.

### 2. 2007 MSA.

National takes the lead in pressing for the 2007 MSA, and it is easy to see why: that MSA expressly establishes the minimum insurance limits for S&S as $3 million, a figure that (thanks to a quirk in National's policy) might eliminate its exposure. But to press the 2007 MSA into service, National is forced to take a tortuous, improbable route. The basic gist is this: (a) the 2007 MSA is a blanket, or nationwide, MSA; (b) the 2008 MSA (which was not initially a blanket MSA) then became a blanket MSA upon its 2011 amendment, such that its integration clause at that time extinguished the 2007 MSA; (c) a 2012 extension letter agreement ("ELA"), which extended the 2007 MSA until December 2012, then revived the extinguished 2007 MSA; (d) the revived 2007 MSA's integration clause then extinguished the 2008 MSA; (e) the revived 2007 MSA then expired in December 2012 pursuant to the ELA. The upshot, according to National, is that when the contracting parties entered the Purchase Order in April 2014, they necessarily invoked the 2007 MSA.

National's contractual argument suffers from multiple problems. First, National assumes rather than establishes that both MSAs are blanket agreements,

15

as its supersession argument demands.[22]  If, as appears likely, the MSAs are ambiguous in this regard, extrinsic evidence is permissible to resolve the ambiguity,[23] and that evidence appears to weigh heavily in favor of the plaintiffs.[24]  Second, under National's theory, the 2008 MSA (thanks to its 2011 amendment) extinguished the 2007 MSA, and National has cited no authority for the proposition that an extinguished agreement can be "revived"[25] by a letter that fails to recognize the agreement is defunct.  (Doc. 315 at 112).[26]

At the end of the day, it does not really matter whether National could support its supersession argument, because the argument does nothing to show that the parties intended to invoke the 2007 MSA when they used the term, "Form 7141."  The best National can muster is an *ipse dixit* that "logic dictates that [the] MSA most recently in force [the 2007 MSA, under National's scenario] would be the controlling agreement," (Doc. 400 at 18), such that the Purchase Order's reference to Form 7141 "necessarily must be to the 2007 MSA" rather than to the 2008 MSA.  (Doc. 340 at 20).

---

[22] National relies on the integration clause that appears in both documents.  In pertinent part, it provides that "[t]his Agreement constitutes the entire agreement between the parties and supersedes all previous … agreements, either oral or written, between the parties hereto with respect to the subject matter hereof."  (Doc. 315 at 105; Doc. 348-4 at 7).  As National recognizes, unless both MSAs are blanket agreements, it would be difficult for National to argue they address the same subject matter.

[23] Both MSAs are governed by Delaware law.  (Doc. 315 at 104; Doc. 348-4 at 6).  As National recognizes, under Delaware law extrinsic evidence is admissible in cases of ambiguity.  (Doc. 388 at 12).

[24] If, as the plaintiffs' evidence indicates, the 2007 MSA applied only to activities at a particular Arkansas facility, it would be readily eliminated as a candidate for "Form 7141" as used in the Purchase Order.

[25] (Doc. 340 at 21).

[26] National cites no Delaware authority at all, and the two cases it does cite addressed ratification of agreements then in force.  (Doc. 340 at 21).

The logic of National's position is difficult to discern. As of January 1, 2013, the 2007 MSA was as dead a letter as National claims the 2008 MSA was. As National acknowledges, "[p]arties to an expired contract can continue to operate under that contract even after the termination date," (Doc. 400 at 18), so after 2012 the contracting parties were free to elect to operate under either terminated agreement.[27] The extrinsic evidence demonstrates unequivocally that they chose the 2008 MSA, not the 2007 MSA.[28]

It is uncontroverted that, between January 2013 and April 2014, the plaintiff and S&S entered seven purchase orders at the Naheola mill. (Doc. 348-5). Two of them – including the first of the seven – provided that "this work is to be performed per our agreement and rates on file in purchasing." (*Id*. at 4, 10). It is uncontroverted that the only agreement on file in purchasing at the Naheola mill was the 2008 MSA. (Doc. 348-1 at 55-56).[29] These two purchase orders thus unambiguously incorporated the 2008 MSA, not the 2007 MSA.

---

[27] Elsewhere, National backpedals, suggesting parties cannot continue to operate under a contract that has been superseded by another. (Doc. 340 at 23). This would be a handy rule for National, since it would allow the contracting parties to use the 2007 MSA while precluding them from using the 2008 MSA. The single authority on which National relies for its emendation, however, does not remotely support it.

[28] Alabama law does not require that the incorporated document be a current, or even former, contract. *E.g., Advance Tank and Construction Co. v. Gulf Coast Asphalt Co*., 968 So. 2d 520, 524 (Ala. 2006) (defendant's standard terms and conditions were incorporated by reference, even though that document was not itself a contract); *Ex parte Dan Tucker Auto Sales, Inc*., 718 So. 2d 33, 36 (Ala. 1998) (AAA arbitration rules incorporated by reference). "Parties to a contract are bound by pertinent references therein to outside facts and *documents*," *id*. (emphasis added), not contracts only. As the plaintiffs correctly note, (Doc. 348 at 22-23), it is thus irrelevant to incorporation analysis whether the 2008 MSA (or the 2007 MSA) remained independently in force in April 2014.

[29] The defendants complain that the entire 2008 MSA was not on file – it was missing Exhibit A as well as the 2011 amendment that identified the plaintiff as an "owner." The point, however, is that the 2008 MSA was "on file in purchasing" and the 2007 MSA was not.

National's argument is all or nothing: the parties chose one or the other MSA to govern their post-2012 relations. The two purchase orders discussed above demonstrate that the parties chose the 2008 MSA and not the 2007 MSA. Thus, the reference of the other five purchase orders (including the Purchase Order) to "Form 7141" is also a reference to the 2008 MSA.

### 3. 2008 MSA.

As noted, a contract term is ambiguous only if there are multiple reasonable meanings. As demonstrated in Parts II.C.1-2, the uncontroverted extrinsic evidence negates both a blank form 7141 and the 2007 MSA as reasonable meanings of the term "Form 7141" in the Purchase Order. Their elimination leaves only the 2008 MSA as a reasonable meaning, which resolves the ambiguity and requires that the Purchase Order be construed as incorporating by reference the terms and conditions contained in the 2008 MSA. As discussed below, construing "Form 7141" to reference the 2008 MSA is more than reasonable; it is inescapable.

That "Form 7141" in the Purchase Order refers to the 2008 MSA is shown by the contracting parties' contemporaneous, express identification of the 2008 MSA as "7141" when they entered the 2008 MSA, as discussed in Part II.A, *supra*. (Doc. 348-4 at 10-11). It is further shown by the parties' interchangeable use of "Form 7141" and "our agreement … on file in purchasing" in post-2012 purchase orders, where the latter unquestionably refers to the 2008 MSA, as discussed in part II.C.2, *supra*. A 2011 purchase order was even more pellucid, providing that "[a]ll work against this order is governed by the Master Service Agreement … dated December 15, 2008." (Doc. 369-1 at 41).

The defendants have identified no purchase orders involving work at the Naheola mill that used anything other than these three nomenclatures, and they have identified no evidence that the contracting parties' intent swung wildly, without rhyme or reason, between using the 2008 MSA and some different "Form

18

7141."[30]  And since all other alternative meanings of "Form 7141" have been eliminated as reasonable possibilities under the evidence and argument presented, the defendants can identify nothing to which "Form 7141" reasonably could refer if not to the 2008 MSA.

Certain defendants object that S&S did not subjectively understand that "Form 7141" meant the 2008 MSA.  Even if this is so, it is irrelevant.  "[T]he law of contracts is premised upon an objective rather than a subjective manifestation of intent approach."  *Harbison v. Strickland*, 900 So. 2d 385, 391 (Ala. 2004) (internal quotes omitted).  The objective manifestations of intent discussed above establish beyond genuine dispute that the 2008 MSA is "Form 7141."[31]

## CONCLUSION

For the reasons set forth above, the plaintiffs' motions for summary judgment are **granted** to the extent they seek to establish that the 2008 MSA supplies the terms and conditions governing the Purchase Order.  For the same reasons, the defendants' motions for summary judgment are **denied** to the extent they seek to establish any different source of the terms and conditions governing the Purchase Order or to eliminate the 2008 MSA as that source.

---

[30] Certain defendants insist that, since the parties knew how to explicitly reference the 2008 MSA, references to "Form 7141" must refer to something else.  The argument is a bit like saying that, after a person describes his vehicle by its VIN, any references by that individual to "my car" cannot refer to the same vehicle.  The argument rings particularly hollow here, where the contracting parties themselves designated the 2008 MSA as "7141."

[31] The parties have presented additional extrinsic evidence not discussed herein, which the Court has considered, but none of it is capable of altering the conclusions expressed in this order.

Because the Court has not relied on the material to which objection is made, Aspen's motion to strike, (Doc. 428), is **denied as moot**.  However, the Court notes that, were the motion not moot, it would be denied for the reasons stated in the plaintiffs' objection, (Doc. 443), as the statement plainly does not rise (or sink) to the level of a sham affidavit within the contemplation of governing law.

DONE and ORDERED this 16th day of December, 2016.

                                      s/ WILLIAM H. STEELE
                                    CHIEF UNITED STATES DISTRICT JUDGE